## BARTLETT *versus* BLAKE.

Upon a party alleging fraud, is imposed the burden of proving it.

The insolvency of the vendor at the time of the sale of a chattel in an unfin-ished state, his treatment of the property as his own in completing it after such sale, do not furnish conclusive evidence of a fraudulent sale; but those *indicia* of fraud may be explained so as to make the sale valid as against the creditors of the vendor.

The sale and delivery of a chattel in an unfinished state, but which, by agree-ment of the parties, is left in the control of the vendor to finish, is sufficient to vest the property, after its completion, in the vendee, as against the at-taching creditor of the vendor.

Where an unfinished chattel, to be completed by the vendor, was transferred by a bill of sale absolute on its face, but containing the clause " allowing the vendee the right to take the same at will," such clause will not author-ize the vendee to repudiate the contract.

ON FACTS AGREED.

TRESPASS against a deputy sheriff for taking the plaintiff's wagon.

The plaintiff claimed title to the wagon under the follow-ing bill of sale:—

"W. B. Bartlett bo't of

"J. G. Robinson, One new side-spring single wagon-wood, including the running gear and the irons for the same, and the said Robinson agrees to iron, paint and trim the wagon and put it in good complete running order in July next.— On which the said Bartlett has advanced and paid him thirty-six dollars and seventy-nine cents, and the said Bartlett agrees to make such advances from time to time as may be necessary to complete said wagon, not exceeding sixty-five dollars, with the right to take the same at will.                "John G. Robinson.

"Norway, June 1, 1853."

Most of the facts in this case appear in the opinion of the Court.

At the time of the sale, Robinson had no real estate and all his personal property was mortgaged to its full value. He bought the iron to complete it on his own credit, and did not disclose to the persons he traded with in relation

to the materials and work to be done on the wagon, that any person was interested in the wagon but himself. No one was present at the time of the writing of the bill of sale, or delivery of the parts of the wagon.

The defendant claimed to hold the wagon as the property of Robinson on an execution against him.

*L. Whitman,* for defendant, contended, that the sale to the plaintiff was a fraud upon the creditors of Robinson, and as to them void.

1. The delivery was not sufficiently public, witnesses were at hand and should have been called; a mere exhibition of separate parts of an unfinished wagon at different times and places, under a contract that it should become plaintiff's property, when finished, cannot be, in legal contemplation, a delivery.

2. These parts of a wagon were not left in the hands of the plaintiff, nor, as his property, put into the hands of a third person.

3. The facts, that at the time Robinson had no unincumbered property, but all mortgaged to its full value, that he was in embarassed circumstances, and the mode of sale and of an unfinished article to be by himself completed, show unerringly, that the sale was only colorable, and the design was to place his property beyond the reach of his honest creditors.

4. The memorandum at the bottom of the bill of sale, shows, that it was not absolute, but that the plaintiff had the right to abandon it at any time before final acceptance of the finished work.

5. The object of the sale must have been known to plaintiff, and even if he paid a consideration, it cannot avail him.

6. The usual badges of fraud are found in this pretended sale.

*Bartlett, pro se,* — 1. As to the delivery of the wagon, cited *Badlam* v. *Tucker,* 1 Pick. 396; *Jewett* v. *Warren,* 12 Mass. 30; *Putnam* v. *Dutee,* 8 Mass. 287; *Macomber* v. *Parker,* 13 Pick. 182.

2. That the bill of sale was an absolute one, appeared on its inspection.

3. The plaintiff had a right to employ the vendor as well as any other person to finish the wagon.

4. The facts show, that Robinson was really acting as the agent of plaintiff in all he did, and it was immaterial whether he disclosed it or not, such withholding of his character was never considered an indication of fraud.

5. No circumstances are developed in this case to throw any suspicion of fraudulent design on the part of the plaintiff, or even upon the vendor.

SHEPLEY, C. J. — The suit is trespass for a wagon. The plaintiff claims title by purchase from John G. Robinson by bill of sale bearing date on June 1, 1853. The defendant, as a deputy of the sheriff, seized and sold it as the property of Robinson, on July 30, 1853, by virtue of an execution issued on a judgment recovered in 1851, by Ebenezer C. Shackley against Robinson. The description of the property in the bill of sale is "one new side spring wagon-wood, including the running gear, and the irons for the same; and the said Robinson agrees to iron, paint and trim the wagon, and put it in good complete running order in July next." The plaintiff appears to have paid by delivering up a note and discharging an account against Robinson.

The objections made to the plaintiff's title are, that there was no sufficient delivery, and that the sale was fraudulent as against creditors.

There does not appear to have been any delivery, when the bill of sale was made.

Robinson testifies that, on June 25, he delivered part of the property to the plaintiff, who accepted it; and that about ten days afterwards he met him in the highway, when he was carrying the other part to him, and was directed by him to leave it with the first part, which had been previously left in the shop of Joshua B. Stuart to be ironed; and that he did so.

This was a sufficient delivery to vest the title in the plaintiff before the seizure on execution.

The elements of fraud principally relied upon are, the insolvency of Robinson; his treatment of the property as his own after the sale; its sale in an unfinished state, and a clause in the bill of sale allowing the plaintiff "the right to take the same at will."

The case presented does not appear to be one, in which the owner of property, being about to fail, or to become known to be embarrassed, finds it convenient to dispose of his property to prevent its attachment or seizure by his creditors. So far as the condition of Robinson is disclosed, it would rather appear, that he had been insolvent, and known to be so, before he commenced to make the wagon. When a person known to be insolvent proceeds to manufacture an article and to sell it, in an incomplete state, to a favored creditor in payment of a debt due, the indication of fraud is not so strong as it would have been if he had continued in credit, until he found it failing and himself under the necessity of making a disposition of his property to prevent its attachment or seizure.

Robinson's treatment of the property after the sale, as if it were his own, would have been a strong indication of fraud, if not explained. By the contract he was to have the wagon finished, and the plaintiff was to make advances to him for that purpose; but was not to pay the bills to those employed. Robinson's engagements to pay from his own resources the blacksmith and painter, do not appear to have been inconsistent with the contract and the sale of the unfinished materials. The right of the plaintiff to take the wagon at pleasure, might be inserted to enable him to avoid a loss in case Robinson should fail to have it finished properly, or in case any of his creditors should attempt to take it, before it was finished. It does not authorize such a construction of the contract as would allow the plaintiff, at his election, to repudiate the contract and annul the sale. The burden of

proof, to establish the alleged fraud, is upon the defendant, and it is not sufficient to raise suspicions.

*Defendant defaulted.*

HOWARD, RICE, HATHAWAY and CUTTING, J. J., concurred.