ESTELLE FRIDENBERG TISCHLER, INDIVIDUALLY AND AS ADMISTRATRIX OF THE ESTATE OF PHILIP TISCHLER, DECEASED, ET AL., *Appellants*, v. FREDA K. ROBINSON, *Appellee*.

Opinion Filed April 24, 1920.

Petition for Rehearing Denied June 17, 1920.

1. Fraud is not to be presumed but must be proved. It cannot be made to depend upon presumptions not legitimately drawn from the facts.

2. The voluntary assignment of one's interest in property to a relative when the assignor is neither insolvent nor in failing circumstances is not a fraudulent transaction *per se* and invalid as to creditors.

3. Where relief is asked, based upon allegations of fraud alleged to have been committed by a person who has since deceased, the evidence of such fraud should be clear and convincing to support a decree granting the relief.

4.  The presumption exists that business transactions between individuals are honest and made without fraud, and he who asserts the particular transaction to·be of a different character must prove it.

An Appeal from the Circuit Court of Duval County, Daniel A. Simmons, Judge.

Decree reversed.

WHITFIELD, J., dissents.

*Geo. C. Bedell,* for Appellants;

*Nathan P. Bryan,* for Appellee.

ELLIS, J.—This case is here for the second time, this time upon appeal from the final decree rendered in February, 1918. The first appeal was taken from an order sustaining a demurrer to the bill of complaint which was exhibited by Freda K. Robinson and her husband O. K. Robinson against Philip Tischler, Flora Max and Nathan Max, her husband. The purpose of the bill was to subject a certain strip of land in the city of Jacksonville, twelve feet wide fronting on Main street and running back one hundred and five feet, being part of the northern end of Lot four, Block eighty (official numbers) and adjoining the Placide Hotel, to the payment of the claims of the creditors of Philip Tischler, among whom were Freda K. Robinson and her husband, O. K. Robinson.

A statement of the allegations of the bill is contained in the reported case which is in Volume 69, Page 77, of the Florida Reports. In that case it was held that

while the money decree against Philip Tischler, which had been obtained by the Robinson, could not have been enforced by execution issued at law to be levied upon the equitable property of the debtor, yet if he had in fraud of his creditors caused the legal title to lands to be placed in another leaving the beneficial interest in himself, judgment creditors having an equitable right to a lien on the debtor's interest in the land could in equity subject that interest in the satisfaction of their judgments where no rights of innocent purchasers for value and without notice of the fraud intervened.

After this decision the complainants amended their bill by striking out the fourteenth paragraph which contained the prayer and substituted another in which it was prayed that the title to the strip of land be decreed to be held by Philip Tischler for the benefit of the judgment creditors whose claims were reduced to judgment prior to the alleged fraudulent conveyance to Flora Tischler Max and that the land be declared subject to such liens, and that it be sold in satisfaction thereof. Or that the title to the land be declared to be in the Trustee in Bankruptcy of the Estate of Philip Tischler and held by him subject to the lien of such judgment. W. Frazier Jones, as Trustee in Bankruptcy of the Estate of Tischler, was made a party. Philip Tischler answered the bill incorporating in his answer a demurrer to the bill upon the grounds that the complainant's remedy, if any existed, was within the cognizance of the District Court of the United States; that the effect and purpose of the bill was to revoke the discharge in bankruptcy of Philip Tischler, which occurred more than one year before the bill was filed; and that the suit was against a trustee in bankruptcy subsequent to two years after the estate had been

closed.   The answer then averred that Philip Tischler
was adjudicated a bankrupt on the 10th day of May, 1909,
and in June of that year the referee made his report, a
copy of which was attached to the answer and made a
part of it; that in July the defendant was granted a
final discharge.   Wherefore it was claimed that the com-
plainants should not prosecute their suit; benefit of this
averment was claimed as if it had been asserted by way
of a plea.   The answer avers that there were some amounts
paid on the balance due the complainants which were
not credited; that the defendant is the owner of the land
described, but denies that he has owned it since De-
cember, 1904, when it was conveyed to Flora Tischler
Max by the Metropolitan Company; it denies that he
was the real owner and that the land was conveyed to
Flora Tischler Max for the purpose of defrauding the
creditors of Philip Tischler, and denied all allegations
of fraud alleged in the bill.   It is admitted that Flora
Tischler Max conveyed the land to Philip in March, 1911,
but denies that such conveyance was without considera-
tion.

The answer also averred that the complainants in
March, 1901, filed their bill in the Circuit Court for Duval
County against Philip Tischler and others, including the
firm of Thalheimer Brothers, in which it was sought to
subject to the payment of the complainants' claim certain
property included in a mortgage from Philip Tischler
to Thalheimer Brothers upon the ground that the same
was in part if not wholly, fraudulent in that it did not
represent the true sum of indebtedness due by Philip
Tischler to Thalheimer Brothers; that the issues in this
case were decided in favor of the defendant and the
decree was affirmed by the Supreme Court.   The same

41—Vol. 79

benefit of this averment was prayed as if it had been asserted by way of plea.

Flora T. Max and her husband also answered the bill disclaiming any knowledge or information of many of the allegations of fact contained in the bill, and denied that Philip Tischler had been the real owner of the property since December, 1904, and that it was conveyed by the Metropolitan Company under an agreement with Tischler for his benefit, and that it was held by Flora Tischler Max in her name for the purpose of defrauding the creditors of Philip Tischler. They denied that the consideration for the conveyance was paid by Philip Tischler. They admit the conveyance to him about the time alleged in the bill but deny that the conveyance was without consideration. Upon the death of Philip Tischler, which occurred some time after the institution of this suit, other persons were made defendants upon petition of complainants.

Estelle Fridenberg Tischler, individually and as administratrix of the estate of Philip Tischler, answered the bill incorporating in the answer a demurrer upon the same grounds as stated heretofore, and averred the bankruptcy proceedings by way of plea.

In February, 1918, the Chancellor rendered a final decree, holding the equities to be with the complainants and subjecting the property described to the payment of the decree which was obtained by the complainants against Philip Tischler in October, 1904, and directing a sale of the property and the application of the proceeds to the payment of the debt. From this decree Estelle Fridenberg Tischler, individually and as administratrix of the estate of Philip Tischler, and in the name of the other defendants, appealed.

The burden of proving the allegations of fraud upon which the complainant based her right to subject the described property to the payment of her judgment was upon her. Fraud is a matter of motive and intent, a conclusion more often than otherwise to be drawn from many circumstances. It is not to be presumed but must be proved; and does not depend upon presumptions not legitimately drawn from the facts. See Wilson v. Lott, 5 Fla. 305; Ballard v. Eckman & Vetsburg, 20 Fla. 661.

The alleged fraud in this case was said to have consisted in the effort of Philip Tischler in December, 1904, while he was indebted to the complainant and was possessed of no visible property out of the proceeds of which the complainant could obtain payment, to conceal his real ownership to a narrow strip of land fronting on Main street, which he had arranged to acquire some years before. From the evidence introduced in this case, which consisted largely of records in other suits to which Tischler was a party, and in which the land involved here and that lying immediately to the north was involved, the following brief and perhaps incomplete history of this litigation may be gleaned: Lots four and eight, of Block eighty, lie on the west side of Main street in the city of Jacksonville and are contiguous to each other, the south boundary line of Lot eight being the north boundary line of Lot four. In 1885 Tischler acquired the south sixty feet of Lot eight and shortly afterwards erected thereon the Placide Hotel. When he came to erect the building, however, the owner of the northern part of Lot eight would not agree to the extension of the footings of the north wall beyond the line, so Tischler acquired about thirty inches of land from the northern side of Lot Four. In 1887 Tischler gave a mortgage to

Thalheimer Brothers upon the south sixty feet of Lot eight upon which the hotel had been erected, to secure a debt which he owed to them. In 1894 the owners of lot four agreed to convey to Tischler a strip of land off the north side of lot four twelve feet wide, being the same strip involved in this suit. In May, 1901, the Placide Hotel was destroyed by fire. In December, 1904, the owners of lot four conveyed to the Metrolopitan Company, which conveyed at that time to Flora Tischler Max the twelve foot strip. In August, 1904, the Judge of the Circuit Court for Duval County in a foreclosure suit in which Thalheimer Brothers, Philip Tischler, Freda K. Robinson and others were parties decreed that the south sixty feet of lot eight was subject to certain liens as follows: One held by City of Jacksonville for taxes amounting to about $1,654.79; one held by Thalheimer Brothers amounting to about twenty thousand five hundred dollars and interest on account of a mortgage given by the former owner of the property in 1885 and the mortgage to Thalheimer Brother given by Tischler in 1887, this lien held by Thalheimer being held to be superior to all other liens except that held by the city for taxes; a lien held by Freda K. Robinson on account of a mortgage made by Tischler to Wilhelmina Peters in October, 1887, which lien amounted at the time of the decree to about sixteen thousand seven hundred dollars and interest which was held next in order of priority to the Thalheimer lien and two other liens on account of judgments held by Dexter Hunter and J. C. L'Engle. The decree ordered the property to be sold to satisfy these liens. It appears that Thalheimer Brothers became the purchasers of the property at that sale and that after applying the proceeds of the sale to the indebtedness mentioned in the decree there remained due to

Thalheimer Brothers from Tischler about fourteen thousand seven hundred dollars, and to Freda K. Robinson about eighteen thousand two hundred dollars. In June, 1908, a decree was rendered in a suit by Thalheimer Brothers against Philip Tischler, Freda K. Robinson and others in which the court found that Tischler was due Thalheimer Brothers about thirty-two thousand dollars and that the same was a first lien upon the north forty-five feet of lot eight and Tischler's interest in a certain contract which he had with the former owner of lot four relating presumably to the thirty or more inches on the north side for the wall footings and upon other property described. This property was ordered to be sold and the proceeds applied to the debts. The north forty-five feet of lot eight and the interest which Tischler had acquired to the thirty inches on the north side of lot four were ordered to be sold as one property. It is not apparent who became the purchasers of this property, nor is it material, but it does appear that in May, 1909, Thalheimer Brothers conveyed to W. B. Dawson lot eight. In the meantime the Thalheimers had collected fire insurance from the different insurance companies carrying insurance upon the Placide Hotel which amounted to about twenty-one thousand dollars. In May 1909, Philip Tischler filed his petition in voluntary bankruptcy; he was discharged in July, 1909. The debt due to Freda K. Robinson was listed as of the amount of seventeen thousand nine hundred and eighty-eight dollars, and Thalheimer Brothers' debt at eleven thousand two hundred and thirty-three dollars. In 1910 Flora Max and her husband mortgaged the twelve-foot strip on the north side of lot four to A. S. Woolley to secure the payment of a note for ten thousand dollars. This mortgage was cancelled in March, 1911, and in the same

month Flora Max and husband conveyed the strip of land by deed to Philip Tischler. During these years from 1887 to 1911 the Placide Hotel property and the twelve "foot" strip on the north side of lot four was the subject of many contracts, commercial activities and litigation between the parties whose interests were involved. The relations between Thalheimer Brothers and Tischler were attacked as fraudulent as having been formed for the purpose of aiding Tischler to avoid the payment of his just obligations. In these controversies the issues were decided by the courts in favor of the Thalheimers and Tischler and the debts due by the latter to the former held to have been contracted in good faith and were valid. We have found nothing in this record to justify a contrary conclusion even if the question was an open one. The transaction in which the title to the strip of twelve feet on the north side of lot four passed to Flora Tischler Max from the Metropolitan Company is made the subject of the bill in this case. To establish the alleged fraud much documentary evidence consisting of deeds, copies of pleadings and decrees in the suits to which reference has been made, and oral testimony was introduced. We have considered this mass of evidence contained in a printed volume of 410 pages with the purpose mainly in view of discovering some evidence of the fraud alleged sufficient to warrant the decree.

It appears to be true that Tischler by negotiations with the owners of lot four obtained an agreement for the conveyance to him of the north twelve feet, but it appears that in 1893 he assigned that agreement to Flora Tischler who afterwards became Mrs. Max, and to whom in 1904 the conveyance was made. According to the recitation in the Metropolitan Company's deed Tischler as-

signed his agreement to Flora Tischler eleven years before the complainants obtained their deficiency decree, and nearly eight years before they commenced proceedings against Tischler to foreclose the Peters mortgage, which was executed in February, 1890, and was the third mortgage existing upon the south sixty feet of lot eight. The first having been executed by Burbridge, the former owner of the lot, to Laura Leverich in April, 1885, and the second executed by Tischler to Thalheimer Brothers in July, 1887. Soon after that suit was begun the great fire of 1901 occurred which destroyed the building upon the lot involved in the litigation. After the fire, Tischler obtained from the Thalheimers other monetary accommodations. The sale of the property described as the south sixty feet of lot 8 and the lease upon the north forty-five feet occurred under the foreclosure proceedings in 1908. To that time Tischler was in possession of the property. The Thalheimers having become the purchasers at that sale conveyed the property to Dawson in 1909. Tischler in 1912 commenced proceedings against Dawson to restrain him from using the north wall of a building occupied by Tischler which covered the twelve feet on the north side of lot four. That building was known as 114 Main street. In that petition Tischler alleged that he and those "under whom he claims by themselves and their tenants have been in actual occupancy" of the building for more than seven years "under claim of right exclusive of any other right." But in answer to the cross bill filed by Dawson in that case Tischler denied that the legal title to the twelve feet was taken in the name of Flora Tischler for his benefit. After the fire in 1901 Tischler erected or completed the building on the north twelve feet of lot four using the reconstructed south wall of the old Placide Hotel. From that time until the

institution of this suit Tischler had possession of, used and occupied the property involved. During this time he was being pressed by his creditors. Judgments and decrees of foreclosure were obtained against him, he filed a petition in involuntary bankruptcy, his hotel property had been sold, but the proceeds of the sale were not sufficient to pay all his debts. He was reduced to such indigence, according to his petition in bankruptcy, that he had no property, real or personal, except wearing appearal of the value of sixty dollars, and choses in action listed at $3,415.00. Yet in 1909 when Thalheimers sold the Placide Hotel property to Dawson, which was in May of that year, Tischler received from the Thalheimers about twenty-two thousand dollars. His petition was filed in May, his discharge obtained in July. At about the time of his discharge in bankruptcy he obtained the money from the Thalheimers which is said to have been a gift. There is sufficient evidence to sustain the conclusion that Tischler paid for the property involved, that it was conveyed by the Metropolitan Company to his neice, Mrs. Flora Tischler Max, upon an assignment of his interest to her in 1893, that the deed was not recorded for about a year, that Tischler occupied the property, used and enjoyed it, exercised supervision and control over it, made improvements upon it at his own expense. When Mrs. Max was consulted about the property by Mr. Jonas, although she asserted that it was hers, she consented to certain arrangements with Dawson concerning a wall on the north side of it for Tischler's benefit. If the assignment by Tischler to Flora Tischler in 1893 was valid, made in good faith and not for the purpose of defrauding the complainants or other creditors, the conveyance to Mrs. Max, who was Miss Flora Tischler, was a valid conveyance, and all other matters and deal-

ings concerning the property perfectly consistent with good faith and fair dealing so far as creditors of Tischler are concerned.   If Mrs. Max owned the property she could have given it to Tischler if she had chosen to do so; of course she could have permitted him to use it as he wished and as he was making improvements upon it such an arrangement may not have been unprofitable. Tischler's transfer of his interest in the property to Flora Tischler in 1893 was not *per se* a fraud.   12 R. C. L. 588.

It does not appear that at that time he was insolvent or in failing circumstances.   The complainants' predecessor had security for the debt owed.   In such case, if the assignment of Tischler's interest to his niece had been voluntary it would not necessarily have been fraudulent for that reason.   12 R. C. L. 593.

Tischler died before the evidence was taken in this case.   The evidence as to fraud by him should be clear and convincing.   See Barnes v. Willis, 65 Fla. 363, 61 South. Rep. 828.

The law presumes the transaction to have been honest, that it was without fraud, that it was for an honest purpose, and the person who asserts that it was of a different character must prove it.   Wilson v. Stevens, 129 Ala. 630, 29 South. Rep. 678; Gilbert v| Glenny, 75 Iowa 513, 39 N. W. Rep. 818; Conry v. Benedict, 108 Iowa 664, 76 N. W. Rep. 840; Bartlett v. Blake, 37 Me. 124; Hazell v. Bank of Tipton, 95 Mo. 60, 8 S. W. Rep. 173; Hagerman v. Buchanan, 45 N. J. Eq. 292, 17 Atl. Rep. 946. But if it is true that Thalheimers' money paid for the land, and there is some evidence to support such a theory, the transaction is not one of which the complainant could complain.   There is evidence that Tischler became heavily

indebted to the Thalheimers. At the time of the fire in 1901 that indebtedness amounted to about thirty thousand dollars. The money collected for insurance. The Thalheimers permitted Tischler to use in rebuilding the Placide property, thereby benefitting the complainant, whose lien was second to that of the Thalheimers. When the Thalheimers bought the Placide property at foreclosure sale they allowed Tischler to occupy it. The relations between these people were close and friendly. It is not improbable that Tischler paid for the property with funds due to the Thalheimers, or obtained from them for the purpose of adding greater value to the hotel property. Whatever the explanation may be that would be consistent with fair dealing, it is of secondary importance because until the fraud of the transaction upon the complainants is shown at least by such badges of fraud as to require an explanation of the transaction it should have been held to be valid. We think the evidence establishes no badge of fraud requiring an explanation of the transaction from the defendant Flora Tischler Max. So far as the relations which existed between the Thalheimers and Tischlers are concerned, the court below and this court upon appeal in cases where the complainant in this case was a party have held them to be without fraud upon creditors. The fact that Thalheimer gave to Tischler a large sum of money after the property had been sold for much more than the latter's debt to him is not such a vicious thing as to invalidate all their transactions and stamp them with the vice of fraud.

We think that the Chancellor erred, and hereby order that the decree be and the same is reversed.

BROWNE, C. J., AND TAYLOR AND WEST, J. J., concur.

WHITFIELD, J., dissents.