**ESTATE OF ARTHUR VINING DAVIS v. PRICE, et al.**
No. 63-C-10437.

Circuit Court, Dade County.
April 13, 1965.

W. O. Mehrtens, James E. Glass, and Mershon, Sawyer, Johnston, Dunwody, Mehrtens & Cole, Miami, for plaintiffs and counterdefendant, W. E. Dunwody, Jr.

James A. Dixon and Dixon, DeJarnette, Bradford, Williams, McKay & Kimbrell, Miami, for counterdefendants, Airlift International, Inc. and John Paul Riddle.

Guilmartin & Bartel, Miami, for defendants, and for counterclaimants, James H. Price and James H. Price & Company, Inc.

Darrey A. Davis of Hector & Davis, Miami, for counterdefendant, William K. DeVeer.

HENRY L. BALABAN, Circuit Judge.

This cause is before the court on the several motions to dismiss the amended counterclaim for failure to state a cause of action based on fraud and deceit. The court has had the benefit of argument of counsel for the respective parties, and has carefully reviewed the pleadings and exhibits annexed thereto, and has made an independent research of the law.

Rule 1.9(b), Florida Rules of Civil Procedure, requires that the facts constituting fraud shall be stated with such particularity as the circumstances may permit. The obvious purpose of the rule is to enable the court to determine whether upon all the facts pleaded there is at least a prima facie showing of fraud. Ocala Loan Co. v. Smith, 155 So.2d 711 (1st D.C.A. Fla. 1963). The original counterclaim herein was dismissed with leave to amend by order entered on February 2, 1965, and recorded February 3, 1965, in chancery order book 1820, at page 710. The material averments of the amended counterclaim are not substantially different from those of the original counterclaim. It is apparent that the defendants-counterclaimants have alleged all matters which tend to support their charges of fraud and deceit. No useful purpose may be served by affording further opportunity to amend by restating the same with greater particularity.

The question presented is whether the facts and circumstances are legally sufficient to constitute a cause of action. In testing the sufficiency of the amended counterclaim, the court is required to assign truth to the facts alleged, and determine whether they make an actionable case under applicable principles of law. Binz v. Helvetia Florida Enterprises, 104 So.2d 124 (1st D.C.A. Fla. 1958); Connolly v. Sebeco, 89 So.2d 482 (Fla. 1956). This entails a careful consideration and analysis of the allegations of the amended counterclaim in the light of the contract documents annexed to and made a part of the pleadings by reference.

This suit was instituted on September 27, 1963, by the executors of the estate of Arthur Vining Davis, deceased, against James H. Price, James H. Price & Company, Inc., William R. Price, and James S. Price. The complaint seeks foreclosure of a lien against certain shares of stock pledged as collateral security for an indebtedness of $300,000 (which has been reduced to $253,000 by payment), plus interest, created under and pursuant to the provisions of a written agreement made on December 31, 1957, as amended and modified by four supplemental agreements.

An answer to the complaint has been filed by the defendants, James H. Price, James H. Price & Company, Inc., and James S. Price. A decree pro confesso has been entered against the defendant, William R. Price.

The defendants, James H. Price and James H. Price & Company, Inc., by amended counterclaim, allege that the contracts herein sued upon are void and unenforceable, because the execution thereof was induced by fraud and deceit. The amended counterclaim seeks rescission of the contracts, the return of the moneys paid thereunder, and the shares of stock pledged as collateral security, and judgment for damages in the amount of $1,000,000, with interest and costs. The amended counterclaim brings in new parties, as counterdefendants, namely, Airlift International, Inc. (formerly Riddle Airlines, Inc.). John Paul Riddle, W. E. Dunwody, Jr., and William K. DeVeer. All the counterdefendants challenge the sufficiency of the amended counterclaim by their several motions to dismiss.

The counterclaimants, by their amended counterclaim, admit execution and delivery of a series of written contract documents annexed to and made a part of the pleadings. These contract documents establish the following facts and circumstances —

(a)  During March, 1957, one Chester Devenow, pursuant to an agreement with James H. Price, purchased 150,000 shares of common stock of Riddle Airlines, Inc. (now Airlift International, Inc.) at the purchase price of $300,000. Thereafter, Devenow rescinded the said agreement, claiming it was induced by fraud, and instituted suit for recovery of the $300,000 paid for the stock. As a result of such litigation, James H. Price and James H. Price & Company, Inc., together with Riddle Airlines, Inc., entered into an agreement with Chester Devenow, dated December 31, 1957, wherein and whereby Price and his company agreed and obligated themselves to repurchase the 150,000 shares of stock from Devenow and to pay him $300,000 therefor on or before November 1, 1958. To guarantee performance of the agreement by Price and his company certain stock warrants, shares of stock, and a promissory note were pledged as collateral security.

(b) Thereafter, on July 14, 1958, a supplemental agreement was made and entered into between the same parties. By the terms of this supplemental agreement, James H. Price & Company, Inc. was released from all liability, and in consideration thereof Arthur Vining Davis unconditionally guaranteed performance of the agreement by James H. Price. Pursuant to the request of Price, payment of the indebtedness of $300,000 due on November 1, 1958, was extended and modified as follows: $100,000 on or before November 1, 1958, and the balance of $200,000 on or before February 1, 1959.

(c) James H. Price failed to make the payment of $300,000 to Chester Devenow, and defaulted in performance of said agreement and supplemental agreement. By reason whereof, Arthur Vining Davis, as guarantor, was required to pay said sum of $300,000, plus interest, to Devenow. Thereafter, on March 12, 1959, a second supplemental agreement was made and entered into, wherein and whereby it was provided that for and in consideration of the payment of $50,000 by James H. Price to Arthur Vining Davis on account of said indebtedness, Davis agreed to extend the time for payment of the balance of the indebtedness until September 8, 1959.

(d) Pursuant to the request of James H. Price, a third supplemental agreement was entered into on January 14, 1960, wherein Arthur Vining Davis granted to James H. Price an extension of time until June 1, 1960, to pay said indebtedness.

(e) Finally, on May 31, 1960, a fourth supplemental agreement was entered into, wherein and whereby it is provided that James H. Price is indebted to Arthur Vining Davis for the principal sum of $253,000, together with interest thereon from June 1, 1959, at the rate of 5 per cent per annum. Arthur Vining Davis granted to James H. Price a further extension of time until December 1, 1960, to pay said indebtedness. Arthur Vining Davis further released the note for $175,000 pledged as collateral security under the original agreement. In consideration of the release of such security, William R. Price and Robert M. Hewitt unconditionally guaranteed payment by James H. Price to Arthur Vining Davis of said indebtedness of $253,000, plus interest.

The indebtedness due on December 1, 1960, was not paid. Arthur Vining Davis died on November 17, 1962. It does not appear that counterclaimants filed any claim against the estate of Arthur Vining Davis during the period of time prescribed by law. Nor does it appear that any complaint was made or any action taken by the counterclaimants for rescission of the contracts, or that the counterclaimants repudiated the contracts or in anywise questioned the validity thereof, until after this suit

was filed against them. More than six years elapsed before the counterclaimants asserted any claim that the contracts were tainted with fraud.

The gravamen of the fraud and deceit asserted by counterclaimants in support of their counterclaim for rescission and damages is that they were induced to enter into the contract with Chester Devenow on December 31, 1957, by false representations, promises and assurances made by Arthur Vining Davis and his representatives to the effect that counterclaimants undoubtedly would realize such future profits and financial benefits under their existing underwriting agreement with Riddle Airlines, Inc. that counterclaimants could easily afford to repurchase the shares of stock sold to Devenow.

The underwriting agreement referred to by counterclaimants was made on December 29, 1957, by and between James H. Price & Company, Inc. and Riddle Airlines, Inc. Such underwriting agreement was subsequently cancelled and superseded by a new underwriting agreement made on March 14, 1958. The counterclaimants allege that they were induced by fraud and deceit to agree to cancellation of the original underwriting agreement, in that "in or about February and March of 1958" it was represented to counterclaimants that Arthur Vining Davis was "financially impoverished" and that his most trusted representatives were seriously considering having a committee appointed for him and having him declared incompetent; and that if Arthur Vining Davis were required to live up to his previous promises and commitments, he would be "broke", and that his insolvency "would shake the foundations of the economic structure of South Florida." Counterclaimants say that such representations were false, because Arthur Vining Davis was fully competent, and he was not financially impoverished, since he loaned Riddle Airlines, Inc. the sum of $1,500,000 in cash on February 17, 1958; but that counterclaimants believed such representations to be true at the time, and relied upon them to their detriment.

Counterclaimants further allege that —

"By reason of the long passage of time since the various conversations and transactions between counterclaimants, Davis and these named counter-defendants, counterclaimants are unable at this time, without the aid of discovery of the said counter-defendants, to particularize in greater detail the precise misrepresentations which were made. Counterclaimants allege, however, that they were of a comparable variety to those previously set forth, and were all a part of a carefully calculated and continuing scheme, agreed to by Davis and the named counter-defendants, through which they hoped to induce

counterclaimants, without any consideration, to obligate themselves to the purchase of the Devenow stock . . .''

It has been held that in order to state a cause of action for damages resulting from the fraudulent acts of another (as distinguished from a cause of action for rescission or cancellation of a contract), it is sufficient if the complaint alleges the representation claimed to be fraudulent; that it was known by defendant to be fraudulent at the time it was made to plaintiff; that it was made for the purpose of inducing plaintiff to act in reliance thereon; that plaintiff did act in reliance on the correctness of the false or fraudulent representation made by defendant, as a result of which plaintiff suffered damage. Beagle v. Bagwell, 169 So.2d 43 (1st D.C.A. Fla. 1964); 14 Fla. Jur., Fraud and Deceit, sections 66, 67, 68.

It is equally well settled that where one seeks rescission or cancellation of contractual obligations based on the claim that fraudulent representations have been made to him, he is charged with knowledge of all facts that he could have learned through diligent inquiry. Ramel v. Chasebrook Construction Company, 135 So.2d 876 (2nd D.C.A. Fla. 1962); Stokes v. Victory Land Co., 99 Fla. 795, 128 So. 408. The right to rely on representations is closely bound up with the duty to use some reasonable measure of precaution to safeguard one's own interest. In cases of this kind, the principle that one must exercise reasonable effort or diligence for his own protection is applied in determining the sufficiency of the claim. To constitute remediable fraud, it must appear that the reliance placed on the representation was justified under the circumstances. In other words, the party to whom the representations are made must not only believe it to be true, but must be so situated with respect to what is represented as to have the right to depend on the truth of the statements. Columbus Hotel Corp. v. Hotel Management Co., 116 Fla. 464, 156 So. 893; Potakar v. Hurtak, 82 So.2d 502 (Fla. 1955); Street v. Bartow Growers Processing Corp., 67 So.2d 228 (Fla. 1953); McDonald v. Rose, 50 So.2d 878 (Fla. 1951); Joiner v. McCullers, 28 So.2d 823 (Fla. 1947); 14 Fla. Jur., Fraud and Deceit, sections 35, 37. The principle is stated in 2 Pomeroy's Equity Jurisprudence (3rd Ed.), section 893, as follows — "The plainest motives of expediency and of justice require that he should be charged with all the knowledge which he might have obtained had he pursued the inquiry to the end with diligence and completeness. He cannot claim that he did not learn the truth, and that he was misled."

The amended counterclaim is not only deficient in allegations showing a lack of opportunity on the part of the counterclaimants to inform themselves, but it affirmatively shows unmistakable

evidence of laches on their part in seeking relief and indifference to their interests. See Stokes v. Victory Land Co., 99 Fla. 795, 128 So. 408, where a complaint was dismissed for laches or lack of diligence apparent from the averments therein contained. In the case under consideration, the counterclaimants waited more than six years before they asserted their claim of fraud and deceit.

Fraud is not to be presumed, but must be alleged with such particularity as the circumstances may permit, and does not depend upon presumptions not legitimately drawn from the facts. The law presumes the transaction to have been honest, that it was without fraud, and the person who asserts that it was of a different character must allege and prove it. Tischler v. Robinson, 79 Fla. 638, 84 So. 914.

Assuming that the amended counterclaim is sufficient to state a cause of action based on fraud in the inducement of the contract made on December 31, 1957, by and between the counterclaimants and Chester Devenow, and that the counterclaimants were fraudulently induced to cancel their December 29, 1957, underwriting agreement with Riddle Airlines, Inc. by representations made during February and March, 1958, to the effect that Arthur Vining Davis was "financially impoverished" and consideration was being given to having him declared incompetent, the amended counterclaim admits that thereafter on July 14, 1958, March 12, 1959, January 14, 1960, and May 31, 1960, the counterclaimants entered into new supplemental contracts amending and modifying the terms and conditions governing the transaction, and extending the time for payment of the indebtedness involved, for the benefit of the counterclaimants. These admitted, conceded facts and circumstances are fatal to any cause of action for rescission or damages predicated upon fraud in the inducement of the initial contract arrangements, particularly when counterclaimants wholly fail to negate the clear inference that, under the alleged circumstances, they could have discovered by ordinary diligence that Arthur Vining Davis was neither "broke", nor "incompetent", before they entered into the series of succeeding supplemental contracts.

The universal general rule is that when a party claiming to have been defrauded enters, after discovery of the fraud, into new arrangements concerning the subject matter of the contract to which the fraud applies, he is deemed to have waived any claim on account of the fraud; and he can neither rescind, nor maintain an action for damages. Bonded Adjustment Co. v. Anderson, 57 P.2d 1046, (Wash.), 106 A.L.R. 166.

The controlling general principle is stated in 24 Am. Jur., Fraud and Deceit, section 214, as follows —

. . . The party defrauded must stand toward the other party at arm's length, must comply with the terms of the contract on his part, must not ask favors of the other party or offer to perform the contract on conditions which he has no right to exact, and must not make any new agreement or engagement respecting it. If he does so, he waives the fraud. It is the general rule that if one induced by misrepresentations or fraud to deal . . . or enter into a contract . . . thereafter, with knowledge of the deception, receives from the party guilty of fraud some substantial concession or enters into a new contract in respect to the transaction, he thereby relinquishes all right to recover or recoup damages because of the misrepresentations . . .

The applicable rule of law in Florida is stated in 14 Fla. Jur., Fraud and Deceit, section 60, as follows —

The rule that a defrauded person's affirmance of a transaction does not prevent him, in an action at law, from claiming damages does not apply where he enters into a new contract with respect to the same transaction. Thus, a buyer in an action to recover on a note that he gave for the purchase of stock is precluded from counterclaiming on the basis of fraud where he has entered into a new agreement in compromise of existing differences respecting the transaction tainted with fraud. Similarly, the giving of a renewal note after acquiring knowledge of the fraud allegedly inducing the making of the prior note constitutes a waiver of such fraud. And the fraud in such a case is not available as a ground of defense or counterclaim against liability on the renewal note.

The defrauded persons need not have actual knowledge of pre-existing fraud in order for his entrance into a new agreement to constitute a waiver of the right to claim that he was deceived. He is charged with knowledge of such facts and circumstances as he could have discovered by ordinary diligence. And where he has either actual or constructive knowledge indicating that he has been fraudulently induced to enter into the prior transaction, it becomes his duty to make further investigation in that regard . . .

In Padgett v. Lewis, 54 Fla. 177, 45 So. 29, the Supreme Court of Florida held that one who gives a note in renewal of another note, with knowledge at the time of false representations by the payee, waives such defense, and cannot set it up to defeat a recovery on the renewal note; and where one giving such renewal note either had knowledge of such facts and circumstances, or by the exercise of ordinary diligence could have discovered them and ascertained his rights, it became his duty to make such inquiry and investigation before executing the renewal note, and if he fails so to do he is as much bound as if he had actual knowledge thereof. In that case the renewal note sought to be avoided by charges of fraud was executed six and a half months after the original note. The court said —

. . . Would this not seem to be ample time for the defendants to have discovered all the facts and circumstances which are set out in the plea, and to have ascertained what their rights were in the premises? If they did not discover such facts and circumstances, and ascertain their rights, they could have done so with ordinary diligence, and it was their duty so to do. It must be assumed, then, that they either knew of these matters

at the time of the renewal of the note, or that they could have readily ascertained them. It is well settled here that any pleading must be most strictly construed against the pleader thereof . . .

In Harpold v. Stock, 65 So.2d 477 (Fla. 1953), an action on a note given to plaintiff by defendant for purchase of stock in a corporation wherein the defendant counterclaimed for damages for false and fraudulent representations in the sale of the stock, the Supreme Court of Florida held that the execution of a new contract respecting a former transaction waives any claim based on fraud. The court said —

> . . . This court and the courts generally hold that the execution of a new contract respecting a former transaction waives any claim based on fraud. Hurner v. Mutual Bankers Corp., 140 Fla. 435, 191 So. 831; Storrs v. Storrs, 130 Fla. 711, 178 So. 841; Burne v. Lee, 156 Cal. 221, 104 P. 438; Phillips Petroleum Co. v. Rau Const. Co., 8 Cir., 130 F. 2d 499.

And in Benn v. Key West Propane Gas Corp., 72 So.2d 910 (Fla. 1954), a suit in equity for rescission and cancellation of a contract involving corporate stock, the Supreme Court of Florida said —

> We have carefully analyzed the allegations of the very long complaint in this cause and find that the case presented, taken in the light most favorable to the purchasers, is much weaker than any of the cases which we have cited herein and on which we held rescission and cancellation was not warranted. When the purchasers discovered the alleged false and fraudulent representations, it was their duty promptly to take affirmative action in the matter. In the beginning and before the agreement to purchase was entered into they may have been satisfied to have purchased the plant even had they known the existence of the true facts. When the purchasers learned these facts and failed to take action to protect themselves, their silence and inaction amounted to a waiver . . .

> Moreover, even if the remedy of rescission and cancellation had been available to the purchasers when the new negotiations took place, the new contract was a waiver of any claim based on the previous fraud. Harpold v. Stock, Fla. 1953, 65 So. 2d 477. It is also quite apparent from the record that the position of the parties as they existed prior to the contract could not be restored. It is seldom that equity will grant rescission and cancellation under such conditions. See Steak House, Inc. v. Barnett, Fla. 1953, 65 So. 2d 736.

Under the foregoing principles of law, the amended counterclaim fails to state a cause of action for rescission of the contracts sued upon, or for damages, based upon fraud and deceit. The uncontroverted facts and circumstances are insufficient as a matter of law.

Accordingly, it is ordered, adjudged and decreed that the amended counterclaim filed by the defendants, James H. Price and James H. Price & Company, Inc., is dismissed with prejudice, and this cause is dismissed as to the counterdefendants, Airlift International Inc. (formerly Riddle Airlines, Inc.), John Paul

Riddle, W. E. Dunwody, Jr. and William K. DeVeer, with their costs to be taxed against the counterclaimants upon notice by further order of this court. This cause will proceed to trial upon the issues made by the complaint and answer. In accordance with the order authorizing withdrawal of counsel entered herein on March 31, 1965, this order dismissing amended counterclaim shall become effective on April 30, 1965.