Mr. Justice Westcott
delivered the opinion of the court.
We do not propose to enter into any elaborate discussion of the facts and will do little more than state conclusions in this case.
Our first conclusion is that the mistake as to southeast quarter of the northeast quarter of section thirty-five, town- • ship twenty-three, south, range nineteen east, is established.
Upon the face of the deed of “distribution” as it is called, and without reference to any parol testimony except to locate the houses, it is apparent that there was a mutual mistake arising from misdescription of the lands in this instrument. Hatch Whitfield intended that Mrs. McMinn should have the forty acres upon which the houses were situated, and she was to receive this land according to the understanding. In the instrument of distribution, (as it is called,) it is distinctly stated that she was charged five hundred dollars for the improvements, and it is shown bfeyond doubt by the evidence that the southeast quarter of the northeast quarter contained the forty acres upon which was located the dwelling house and principal improvements" In addition to this, it appears from the testimony that the improvements were on the south half of the northeast quarter, and as according to the “distribution” she was to receive ninety acres of cleared land, and there were onLy one hundred and thirty-five acreso of cleared land in the whole tract, forty-five of which were given to Whitfield, it *must have been understood that she was to have the eighty embraced in the south half of the northeast quarter, otherwise she could not have got the ninety acres of cleared land. In this instrument the parties, so far as the southeast quarter of the northeast quarter was assigned to Whitfield, expressed something different from the actual intent oí the parties, that intent being shown for the most part on the face of the paper, parol testimony being admitted simply to show1 the actual condition of the lands. In all such cases if the mistake is clearly made--out by proofs entirely satisfactory, equity will reform the contract so as to make it conform to the precise intent of the parties. 13 How., 66; • 8 Ala., 345: Story Eq., §152. Lord Hardwicke remarks in Henkle vs. Royal Assurance Company, 1 Ves. Sr., 317: “No doubt but this court has jurisdiction to relieve in respect of a plain mistake in contracts in writing as well ¿s against frauds in contracts, so that if reduced into writing contrary to the intent of .the parties on proper proof that would be rectified.”'
It is insisted, however, that McRae is a bona fide purchaser from Watldns without notice of any equity of Mrs.tv McMinn. In the first place it is to be noticed that Whitfield, Watkins’ grantor, as against Mrs. McMinn, had simply a-n equitable title.
oN conveyances were passed between the parties.
No conveyances were passed between the parties, estate, and the instrument itself did not propose in terms to pass any legal title from the one to the other. True it is that a court of equity might perhaps have treated it as an agreement between tbe parties, and directed at the suit of one or the other an interchange of deeds, but the legal title, so far aa this instrument is concerned, was not affected *228 by it. In the next place it is to be noted that Watkins, McRae’s grantor, was not a purchaser lor valuable consideration from Hatch Whitfield. This deed was in consideration of love and affection. In the next place it is admitted by McRae that at the time he purchased of Watkins, he knew that Mrs. McMinn “was in possession of the property, but thought she was there as a tenant.” This was sufficient information, together with the fact of the recording' of the instrument of distribution of which he had constructive notice, to require him to enquire as to the nature of her possession.
Being held to -a knowledge of the instrument of distribution, he must be held to a knowledge not alone of the deseritpion of the land in the numbers of sections therein contained, but to a knowledge of its character and topoga-phy therein stated. That instrument states distinctly that the grantor of his grantor was to have about forty-five • acres of cleared land and about nine hundred and ninety-fiye acres of uncleared, and that plaintiff was to have about ninety-five acres of cleared land aDd the "buildings thereon, estimated at five hundred dollars. This knowledge of possession as tenant, and this constructive notice as to who was the owner of the buildings, was sufficient to put this purchaser upon enquiry, and, having sufficient information to lead him to a knowledge of the nature of Mrs. McMinn’s claim and title, a court of equity will deem him conusant of it. Notice that an estate is in possession of a tenant is held to be notice of a lease, although the purchaser took it for granted that the tenant was only so from year to year. (2 Ves., 440; 13-Ves., 121.) So if the tenant has even chahged his character by having agreed to purchase the estate, yet his possession amounts to notice of his equitable title as purchaser; -(16 Ves., 249; 2 Sch. and Lefroy, 583;
• 2 Swanst., 181; 2 Ball & Beatt., 416;) and, consequently, a subsequent purchaser, although without actual notice, will be .considered as a purchaser of the seller’s title subject to the equity of the tenant. The authorities go beyond the qase at bar. We think the general rule is, that where a person, other than the grantor, is in possession, it is the purchaser’s duty to enquire into the title; and the presumption of law is that upon such enquiry he ascertains the true state of the title. Here, in fact, the interest of each party was at most an equitable title. Under the distribution the parties had a right to compel an interchange of deeds, subject to existing equities arising from the mistakes stated. (6 Greenleaf, 258; 32 Maine, 143; 22 Maine, 312; 3 Mass., 573; 4 Mass., 638; 2 Mass., 508; 6 Mass., .489; 10 Mass., 60; 3 Pick., 152; 3 Met., 405.)
The decree in this case, as it appears from the transcript of the record, declares “the northeast quarter of section thirty-five, (S. E;% of N. B.%, S. 35, T. 23, R. 19 S. and E.,) twenty-three, range south and east,” “to be the land of complainant,” and perpetually enjoins the defendant from proceedings at law to recover it, or making any claim to it. This is evidently another mistake; either of the judge in making the decree, or of the clerk -in copying it in the transcript of the record. It is a serious error somewhere— one to be regretted. That which is written out at length here should control. What is written in parenthesis we must presume wes intended, as is usual in such cases, to state in figures what is stated at length and- is written out. This being true, the decree here strictly construed declares “the northeast quarter of the northeast quarter of section thirty-five” to- be the land of complainant. This, as a matter of course, is .all wrong. It is thus evident that we cannot affirm the decree disclosed by' this record. But there are other objections >to the decree. The plaintiff does not even pray an absolute decree of this character against McRae. She admits that he is entitled to some other forty acres in lieu of this claimed by her, and asks that other lands be assigned him.
If the defendant so desires it, he should be given another forty acres of the land assigned Adaline McMinn., He is not, however, entitled to land equal in value to five hnudred dollars. He should be given forty acres of the same general character as that embraced in the nine hundred and ninety-five acres assigned to Hatch Whitfield in what is called the distribution.
Should the defendant so desire, the court will refer the question of the allotment of forty acres to him to commissioners, who will be directed to assign to him forty acres of land in such place and at such point and of such quality as above described, as is most equitable and just to each of the parties. If the defendant can establish the precise forty to which he was entitled, and which it was intended he should have, as a matter of course that should' be assigned him. The court, after an allotment made, should decree that the title to the several parcels or portions of the land allotted to each shall vest in the respective parties as against the other parties to the suit, or those claiming through or under them. The chancellor should also direct that a copy of the decree thus rendered be recorded by plaintiff in the office of the Clerk of the Circuit Court in which the lands lie. The expense of a commission may be saved if the parties will consent to an assignment of forty acres to defendant in lieu of the forty acres as to which there was a mistake, the court, upon such consent, making the decree stated. The decree will continue the injunction.
The decree is reversed, and the case is remanded for further proceedings conformable to law and consistent with this opinion.