WILLIAM E. SAPP and his wife, MRS. WILLIAM E. SAPP, COMMERCIAL BANK & TRUST COMPANY, a Florida Corporation, and LINDSEY HOPKINS, et al., *Appellants*, vs. ANNIE LESTER PATTERSON WARNER, and her husband, FRED W. WARNER, JESSIE B. MARKLEY and her husband, ROBERT MARKLEY, *Appellees*.

141 So. 124.

143 So. 648.

144 So. 481.

En Banc.

Opinion filed April 19, 1932.
Petition for rehearing granted May 24, 1932.
Opinion on rehearing filed September 28, 1932.
Opinion on Recall of Mandate filed December 2, 1932.

*Redfearn, Ferrell, Semple & Hirschman* and *T. J. Dowdell,* for Appellants;

*Shackleford, Ivy, Farrior & Shannon,* and *Evans & Mershon* and *O. B. Simmons, Jr.,* for Appellees.

Opinion filed April 19, 1932.

DAVIS, J.—From a final decree foreclosing an unrecorded purchase money mortgage, the defendants below, William E. Sapp and Mrs. William E. Sapp, his wife, Commercial Bank & Trust Company, a Florida corporation, and Lindsey Hopkins, have entered their appeal on behalf of themselves, and all of their similarly situated co-defendants, assigning as error the entry of said final decree for the complainants. The decree appealed from was arrived at on the basis of the record before the Chancellor as it appeared on the final hearing, considered in connection with a special stipulation of facts which had been agreed to by all the parties, so as to directly present the one controlling point of law necessary to be determined in order to fix the equities.

The case is apparently one of first impression in this Court, and in view of the number of defendants who will be affected by the ultimate decision, the question of law involved appears to be of considerable importance. Oral argument was had before Division B, where the controversy over the question was ably presented by both sides. In addition to this, the Court has had the benefit of elaborate briefs convincingly prepared and filed by several of different counsel for appellants, it appearing that the parties interested on the appellants' side of the question amount

to nearly two hundred in number, due to the peculiar circumstances under which this case arose.

Notwithstanding the voluminous record, the facts are not controverted, and there is but one outstanding question of law presented for decision, upon the determination of which will depend the reversal or affirmance of the decree appealed from: "Is a person who claims under a duly recorded deed from the guardian of a minor, whose authority to make the deed is dependent upon proceedings had before the County Judge, charged with notice of the terms and conditions upon which the guardian was authorized by the County Judge to sell the minor's land, when it appears that while the grantees from the grantee of the guardian are otherwise *bona fide* purchasers for value without notice, the records of the County Judge, nevertheless, show that the lands involved in a foreclosure suit brought to enforce an unrecorded purchase money mortgage given to the guardian and another, by his original grantee, were lands sold by such guardian under authority of the Court, upon terms of part cash and balance to be secured by a purchase money mortgage on the land sold, it appearing that all of the defendants claim their interests under the recorded deed from the guardian, executed under and in pursuance of the County Judge's proceedings, but who were without any notice or knowledge of the unrecorded purchase money mortgage, except such as would be charged to them by virtue of what could have been ascertained by inquiry based upon the proceedings taken by the guardian before the County Judge?"

The lower court decided the question in the affirmative, and decreed that the foreclosure should proceed under complainant's unrecorded purchase money mortgage, notwithstanding the claims of the defendants that they should be considered as *bona fide* purchasers for value, without notice, from the guardian's original grantee under the re-

corded warranty deed which the guardian had executed at the time of the guardian's sale.

The facts, stated chronologically, are as follows:

The complainant Mrs. Warner was the daughter of the complainant Mrs. Markley. Mrs. Warner (formerly Annie Lester Patterson), on June 23, 1911, and at the time of the making of the guardian's sale hereinafter mentioned, was a minor; James M. Jackson, Jr., was the legally constituted guardian of her estate, under order of the County Judge of Dade County.

The minor was originally seized and possessed of the fee simple title to the lands involved in this suit, subject to the estate by dower of her mother, Mrs. Markley.

On June 23, 1911, the County Judge of Dade County entered an order based upon a petition filed by James M. Jackson, Jr., guardian, authorizing the guardian to sell the minor's interest in the real estate involved in this suit and other lands, at private sale, for cash, or upon terms. On September 6, 1932, James M. Jackson, Jr., filed his report of sale in the office of County Judge of Dade County, showing that the real estate involved in this suit had been sold to George E. Merrick for the sum of $20,000.00 upon the following terms: $2,000 cash and $18,000 in five years, together with interest at the rate of 8 per cent. per annum, payable semi-annually on all deferred payments, and that the said deferred payments were to be secured by a purchase money mortgage on said property.

The report further shows that the property had been sold at private sale to the highest and best bidder "on reasonable terms" to George E. Merrick for the sum of twenty thousand dollars, "two-thirds of which the said Annie Lester Patterson, a minor, is entitled to receive, and will receive, and the other one-third of said $20,000 being paid to Jessie B. Markley, formerly Jessie B. Patterson, widow of Samuel L. Patterson, and mother of Annie Lester

Patterson, a minor," on certain terms and conditions as to deferred payments which contemplated and embraced the total purchase price as being subject thereto.

On September 6, 1923, based upon the report of sale aforesaid, the County Judge entered an order confirming the said sale and directing the guardian to execute and deliver a deed to George E. Merrick, conveying all of the right, title and interest of the minor in and to said property, and authorizing and empowering him "to take back a purchase money mortgage constituting a first lien against the property for all deferred payments."

On August 16, 1923, a deed was executed by Jessie B. Markley, joined by her husband, and James M. Jackson, Jr., guardian of Annie Lester Patterson, a minor, conveying the property to George E. Merrick. This deed was dated August 16, 1923, but it was not filed for record until September 7, 1923, the day after the County Judge entered the order confirming the sale.

On August 4, 1923, George E. Merrick executed two promissory notes, bearing the date and evidencing the deferred portion of the purchase price for the land. One of the notes was for $12,000, payable to the order of James M. Jackson, Jr., as guardian of Annie Lester Patterson, and the other of the notes was for $6,000, payable to the order of Jessie B. Markley. The notes, according to their terms, were to become due on or before five years after said date.

To secure these notes, George E. Merrick executed and delivered a purchase money mortgage upon the land he had purchased at the guardian's sale. This mortgage was executed to James M. Jackson, Jr., as guardian of Annie Lester Patterson, a minor, and to Jessie B. Markley, individually, because of her own individual interest in the same property, and was on the same date as the notes which were secured thereby. This mortgage was never

recorded because it was lost or misplaced and was not found until after the bill was filed in this cause and shortly before the final hearing.

In 1926, Merrick and wife executed and delivered two mortgages, dated August 4, 1923, acknowledged September 30, 1926, one of which was executed to James M. Jackson, Jr., as guardian of Annie Lester Patterson, for the purpose of securing the note of $12,000 executed to the guardian, as aforesaid, and the other of which was executed to Jessie B. Markley for the purpose of securing the note for $6,000, payable to Mrs. Markley, as aforesaid. Each of said mortgages showed that it was a purchase money mortgage upon the land and was given in lieu of the former mortgage of like import, tenor and date, which had been lost prior to record. These last mentioned mortgages were filed for record on March 4, 1927, and were recorded.

The parcel of land involved in this suit, when conveyed to Merrick, was an entire parcel, but after the purchase thereof by Merrick he caused the same to be subdivided into lots and blocks which were later sold from time to time to the numerous defendants who later appeared to resist the foreclosure here involved.

On November 1, 1924, after the record of the deed from Jackson, as guardian, and Mrs. Markley to Merrick, but before the execution and record of the two evidentiary mortgages above mentioned, Merrick executed to the appellant, A. J. Orme, as Trustee, a mortgage upon all of said lands and other lands, securing an indebtedness of $300,000, and after the record of the deed from Jackson, as guardian, and Mrs. Markley to Merrick, but before the filing for record of the two evidentiary mortgages above mentioned, Merrick executed deeds to certain of the defendants described in the bill, purporting to convey specified lots in the subdivision of the property conveyed by the guardian and Mrs. Markley to him. These deeds appear

to have been recorded after the deed from the guardian and Mrs. Markley to Merrick, but *before* the recording of the two evidentiary mortgages above mentioned.

Merrick later executed a deed conveying to Coral Gables Corporation all of the land, except such lots as had theretofore been conveyed by him to certain of the defendants described in the bill. This deed was also executed after the recording of the deed from the guardian and Markley to Merrick, but before the filing for record of the two evidentiary mortgages.

After Coral Gables Corporation received the deed above mentioned it executed to certain of the defendants described in the bill, deeds conveying certain of the lots in the subdivision. All of these deeds likewise were executed after the recording of the deed from Jackson, as guardian, and Mrs. Markley to Merrick, and some of them were executed before the filing for record of the two evidentiary mortgages.

Certain of the defendants described in the bill received deeds from Coral Gables Corporation conveying specified lots in the subdivision, which deeds were executed and recorded after the filing for record of the two evidentiary mortgages above mentioned.

The bill for foreclosure was filed October 27, 1928. It sought the foreclosure of the original unrecorded and lost mortgage deed dated August 4, 1923, executed by Merrick to James M. Jackson, Jr., as guardian of Annie Lester Patterson, a minor, and Jessie B. Markley, for default in the payment of principal and interest of the secured debt. The two later mortgages executed and delivered subsequent to the execution and delivery of the original unrecorded mortgage deed appear to have been referred to in this foreclosure bill for the sole purpose of establishing the terms and provisions of the original mortgages, which at the time of the filing of the bill was not at hand, because

of its having been misplaced under the circumstances hereinbefore stated.

The effect of the decree of foreclosure is to hold that the many defendants who had acquired their titles to their individual lands through the chain of title containing the recorded deed from Jackson, the guardian, and Mrs. Markley, were not *bona fide* purchasers for value without notice insofar as the two unrecorded purchase money mortgages from Merrick to the guardian, and Mrs. Markley were concerned, and that by reason thereof, the complainants were both entitled to enforce their mortgages by foreclosure proceedings brought and maintained not only by the minor, who had subsequently attained her majority, but by Mrs. Markley, who had taken a separate mortgage for her part of the single unpaid purchase price.

It was undoubtedly the purpose of Section 5698 C. G. L., 3822 R. G. S.* to require all mortgages on real estate to be recorded in a separate mortgage book kept in the office of the Clerk of the Circuit Court (See Section 4858 C. G. L., 3077 R. G. S.) in order for same to be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration, *and without notice.* Such has been the construction consistently put upon the statute by this Court. Carolina Portland Cement Co. vs. Roper, 68 Fla. 299, 67 Sou. Rep. 115; People's Bank of Jacksonville v. Arbuckle, 82 Fla. 479, 90 Sou. Rep. 458; Rambo v. Dickenson, 92 Fla. 758, 110 Sou. Rep. 353.

But the statute also expressly recognizes that "notice" of an unrecorded instrument may take creditors or subse-

---

*"No conveyance, transfer or mortgage of real property, or of any interest therein, nor any lease for a term of one year or longer, shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law; nor shall any such instrument made or executed by virtue of any power of attorney be good or effectual in law or in equity against creditors or subsequent purchasers for a valuable consideration and without notice unless the power of attorney be recorded before the accruing of the right of such creditor or subsequent purchaser."

quent purchasers out of the class entitled to rely on the record, or absence of a record, of a particular mortgage sought to be foreclosed as against those who claim to be subsequent purchasers for a valuable consideration without notice of property covered by an unrecorded mortgage.

Notice is of two kinds, actual and constructive. Constructive notice has been defined as notice imputed to a person not having actual notice, for example: such as would be imputed under the recording statutes to persons dealing with property subject to those statutes. Actual notice is also said to be of two kinds: (1) express, which includes what might be called direct information, and (2) implied, which is said to include notice inferred from the fact that the person had means of knowledge, which it was his duty to use and which he did not use, or as it is sometimes called, implied actual notice. Cooper v. Flesner, 24 Okla. 47, 103 Pac. 1016, 20 Ann. Cas. 29, 23 L. R. A. (N.S.) 1180; Simmons Creek Coal Co. v. Doran, 142 U. S. 417, 12 Sup. Ct. 239, 35 L. Ed. 1063; Hoy v. Bramhall, 19 N. J. Eq. 563, 97 Am. Dec. 687; Acer v. Westcott, 46 N. Y. 384, 7 Am. Rep. 355. Constructive notice is a legal inference, while implied actual notice is an inference of fact, but the same facts may sometimes be such as to prove both constructive and implied actual notice. Knapp v. Bailey, 79 Me. 195, 9 Atl. 122, 1 A. S. R. 295.

The principle applied in cases of alleged implied actual notice is that a person has no right to shut his eyes or ears to avoid information, and then say that he has no notice; that it will not suffice the law to remain wilfully ignorant of a thing readily ascertainable by whatever party puts him on inquiry, when the means of knowledge is at hand. McQuiddy v. Ware, 20 Wall. 14, 22 L. Ed. (U. S.) 311; Williams v. Woodruff, 35 Colo. 28, 85 Pac. 90, 5 L. R. A. (N. S.) 986; Vann v. Marbury, 100 Ala. 438, 14 So. 273, 46 A. S. R. 70, 23 L. R. A. 325; Webb v. John Hancock

Mutual Life Ins. Co., 162 Ind. 616, 69 N. E. 1006, 66 L. R. A. 632.

In the case at bar the appellees contend that since the deed dated August 16, 1923, executed by Jessie B. Markley and James M. Jackson, Jr., as guardian of Annie Lester Patterson, a minor, conveying the property to George E. Merrick was itself duly recorded under the recording statutes, that the record of this deed constitutes notice to creditors and subsequent purchasers not only as to the existence *vel non* and contents of that deed, but also as to all such other facts as they would have learned from that record, had it been examined, including the proceedings before the County Judge which culminated in the execution of said guardian's deed, the validity of which deed could only have been determined by an investigation of the proceedings had before the County Judge, upon which the legality of the deed to convey the minor's title necessarily depended. Charles V. Roxana Petroleum Corp., 282 Fed. 983.

These guardianship proceedings, so it is asserted, show every fact with respect to the unrecorded purchase money mortgage of the complainants, and defendants, being deemed to have implied actual knowledge thereof, through the inquiry suggested by the guardian's deed into the County Judge's proceedings, are to be deemed charged in this case with knowledge of what was shown by the proceedings had before the County Judge, since the guardian's deed, without reference to such proceedings to support its validity, would not have been effectual as proof of title in any one claiming under it. McIntyre v. Parker, 77 Fla. 690, 82 Sou. Rep. 253; Davis v. Shuler, 14 Fla. 438; McGehee v. Wilkins, 31 Fla. 83, 12 Sou. Rep. 228.

In several jurisdictions the rule is that purchasers and creditors are charged only by construction with notice of the facts *actually exhibited* by the record made under the

recording statutes, and not with such facts outside of the record itself, as might have been ascertained by inquiries which an examination of the record would have induced a prudent man to take. Neas v. Whitener-London Realty Co., 119 Ark. 301, 178 S. W. 390, Ann. Cas. 1917B 780; L. R. A. 1916A 525; Gilchrist v. Gough, 63 Ind. 576, 30 Am. Rep. 250; Taylor v. Harrison, 47 Texas 454, 26 Am. Rep. 304.

But the rule supported by the best authority is, that the record is constructive notice to creditors and subsequent purchasers not only of its own existence and contents, but of such other facts as those concerned with it would have learned from the record, if it had been examined, and inquiries suggested by it, duly prosecuted, would have disclosed. Nolen v. Henry, 190 Ala. 540, 67 Sou. Rep. 500, Ann. Cas. 1917B 792; Wetzler v. Nichols, 53 Wash. 285, 101 Pac. 867, 132 A. S. R. 1075; Gaines v. Saunders, 50 Ark. 322, 7 S. W. 301; Simmons Creek Coal Co. v. Doran, 142 U. S. 417, 35 L. Ed. 1063, 12 Sup. Ct. 239; H. B. Claflin Co. v. King, 56 Fla. 767, 48 Sou. Rep. 37; Gulf Coast Canning Co. vs. Foster, — (Miss.) — 17 Sou. Rep. 683; Martin v. Neblett, 86 Tenn. 383, 7 S. W. 123.

If in the investigation of a title, a purchaser, with common prudence, must have been apprised of another right, notice of that right is presumed as a matter of implied actual notice. Reeder v. Barr, 4 Ohio 446, 22 Am. Dec. 762; Singer v. Scheible, 10 N. E. 616; American Inv. Co. v. Brewer, 74 Okla. 271, 181 Pac. 294; Cambridge Valley Bank v. Delano, 48 N. Y. 326; Blake v. Blake, 260 Ill. 70, 102 N. E. 1007. Means of knowledge, with the duty of using them, are in equity equivalent to knowledge itself. Cordova v. Hood, 17 Wall. 1, 21 L. Ed. (U. S.) 587. See also Taylor v. American Nat. Bank, 63 Fla. 631, 57 Sou. Rep. 678; Hunter v. State Bank of Florida, 65

Flá. 202, 61 Sou. Rep. 497; McRae v. McMinn, 17 Fla. 876; Figh v. Taber, 203 Ala. 253; 82 Sou. Rep. 495.

In the case at bar, even if the order of the County Judge, dated September 6, 1923, cannot be construed to be constructive notice of any matter, contract, lien or relationship recited therein over which the County Judge had no jurisdiction, as argued by appellants, it does not necessarily follow that apellants can base their claims of title to the land in question upon the assumed validity of the guardian's deed to Merrick, and at the same time repudiate and deny notice of matters which would have been discovered by a prudent man put on inquiry, especially when those matters must unquestionably have been brought to their attention if they had examined the proceedings of the County Judge which constituted the guardian's authority for the making of such a deed.

This is true because neither the proceedings before the County Judge, nor the guardian's deed standing alone, was sufficient to convey the minor's title. Both together constituted one inseparable and indivisible unit forming a single link in the title chain, because in an action of ejectment the guardian's deed alone would not have been admissible in evidence. McGehee v. Wilkins, 31 Fla. 83, 12 Sou. Rep. 228, and cases cited.

So recording of the guardian's deed imputed notice of the indispensable proceedings preliminary to the execution of that deed, which had been taken before the County Judge to give that deed validity, and under the authorities we have heretofore cited, those who would rely upon such deed as evidence of the rights they assert, must do so charged with implied actual notice of all facts appearing in the proceedings had before the County Judge, and of all facts that a prudent man examining those proceedings would have learned upon reasonable inquiry from the facts disclosed there.

And in this case it appears that an examination of the records of the proceedings before the County Judge would have brought knowledge of both the mortgages sought to be foreclosed to the appellants, since a single consideration of $20,000.00 as the purchase price to be paid for the land was referred to in the guardian's report to the County Judge, and from that report it is plainly deducible that the unpaid balance of $18,000.00 was to be extended over a period of five years, payable in deferred payments to both of the interested owners, and not to the guardian alone.

Nor did the execution of the two new mortgages on September 20, 1926, change the equitable effect of the implied actual notice to appellees of the previous unrecorded mortgage. The subsequent mortgages appeared on their face to be but mere restatements of the previous one for the purpose of having the same placed on record. The execution of the two new mortgages on the same property, to cover the same debt that was secured by the misplaced and unrecorded mortgage, did not operate to merge, release or discharge the prior mortgage, unless so intended by the parties and unless so made by them for the purpose of having them operate as a payment or satisfaction, so as to cancel the former security and substitute the latter. In such situation, the original mortgage cannot be deemed to have been discharged by the execution of the subsequent ones, in the absence of a clear showing of an intention by the parties to that effect. Such intention is affirmatively refuted in the case at bar. See 2 Jones on Mortgages (8th Ed.) 666, Section 1187; 41 C. J. 806 *et seq.* Neither was any such merger, estoppel, payment, satisfaction or discharge of the unrecorded mortgage by the subsequent ones pleaded by defendants. See Loomis v. Dubois, 82 Fla. 293, 89 Sou. Rep. 804.

But, it is argued also that the execution by the guardian of a warranty deed to Merrick, without mentioning any

recitals whatsoever therein to show the orders or other proceedings of the County Judge upon which it was based, constitutes no constructive notice of said orders and proceedings, although such warranty deed was properly recorded, because such a deed without recitals is "not free from criticism." 12 R. C. L. 1142, par. 36.

The answer to this proposition is that while such recitals are appropriate, and good form dictates that they should have been incorporated to render the deed "free from criticism," the absence of them cannot change the legal status of the instrument as being a guardian's deed whose essential validity can only be sustained when shown to be predicated upon valid preliminary proceedings before the County Judge, necessary to have authorized the guardian to have legally made such a deed. The deed appears to have been executed by a guardian describing himself as such, so the absence of recitals in that deed describing the proceedings by which it was authorized is immaterial, since, as we have pointed out, the validity of that deed could only have been determined by examining the records in the office of the County Judge, and if such examination had been made, the fact of the probable and likely existence of the two outstanding unrecorded mortgages must necessarily have been noticed.

The proposition we decide is not that the record of the guardian's deed constituted constructive notice *per se* of the entire proceedings before the County Judge upon which that deed was based, but that the proper record of such deed, with the concomitant necessity imposed upon those relying on it to look to the records of the County Judge to determine whether it had been duly authorized, warranted a finding by the Court of implied actual notice of the existence of the two unrecorded mortgages under the facts of this case, as shown by the evidence and the stipulation. The Chancellor held that as a matter of law there

was such implied actual knowledge, which is an inference of fact drawn by the Court as a matter of law, and not by the law itself, and in the absence of any clear showing that this inference of fact was unwarranted under the evidence and the stipulation, we must affirm the Chancellor's finding on that score.

Constructive notice as we have heretofore pointed out, is an inference the law itself draws, and which cannot be refuted when the facts giving rise to it are made to appear. Implied actual notice, on the other hand, is an inference of fact which may be drawn by the court as a matter of law, when warranted by the circumstances of a particular case calling for its application in order to do equity.

As has been stated by the Court of Civil Appeals of Texas, in the case of Loomis v. Cobb, 159 S. W. 305, (307): "It is a familiar and thoroughly well settled principle of realty law that a purchaser has constructive notice of every matter connected with or affecting his estate which appears by recital, reference, or otherwise, upon the face of any deed which forms an essential link in the chain of instruments through which he deraigns his title. The rationale of the rule is that any description, recital of fact, or reference to other documents puts the purchaser upon inquiry, and he is bound to follow up this inquiry, step by step, from one discovery to another and from one instrument to another, until the whole series of title deeds is exhausted and a complete knowledge of all the matters referred to and affecting the estate is obtained. Being thus put upon inquiry, the purchaser is presumed to have prosecuted it until its final result and with ultimate success. * * * The rule of notice thus imputed is based upon the legal presumption that information has been communicated to or acquired by a party. The presumption is not conclusive but rebuttable. * * * It may be stated as a general proposition that in all instances of constructive notice be-

longing to this class, where it arises from information of some extraneous facts, not of themselves tending to show an actual notice of the conflicting right, but sufficient to put a prudent man upon an inquiry, the constructive notice is not absolute; the legal presumption arising under the circumstances is only *prima facie;* it may be overcome by evidence, and the resulting notice may thereby be destroyed. Whenever, therefore, a party has merely received information, or has knowledge of such facts sufficient to put him on an inquiry, and this constitutes the sole foundation for inferring a constructive notice, he is allowed to rebut the *prima facie* presumption thence arising by evidence; and if he shows by convincing evidence that he did make the inquiry, and did prosecute it with all the care and diligence required of a reasonably prudent man, and that he failed to discover the existence of, or to obtain knowledge of, any conflicting claim, interest, or right, then the presumption of knowledge which had arisen against him will be completely overcome; the information of facts and circumstances which he had received will not amount to a constructive notice. What will amount to a due inquiry must largely depend upon the circumstances of each case. If, on the other hand, he fails to make any inquiry or to prosecute one with due diligence to the end, the presumption remains operative, and the conclusion of a notice is absolute.''

In this case the inference of implied actual notice was warranted by the fact that the persons having constructive notice of the record of the guardian's deed, must in any event have looked to the proceedings which were necessary to support it, and accordingly must be charged with implied actual notice of what an inquiry suggested to a prudent man by those proceedings would have disclosed. There is nothing in the stipulation which inhibited the court from finding such implied actual notice as a matter

of law from the facts before him in this case, since there was no showing that the inquiry suggested by the guardian's proceedings was made, and the facts not discovered after the exercise of due diligence.

It follows from what has been said that the interests asserted by the answers of the appellants were subordinate in equity to the right of foreclosure asserted by the appellees, and that the Chancellor properly so held when he entered his decree of foreclosure, which should be and is hereby affirmed.

Affirmed.

BUFORD, C.J. AND WHITFIELD AND ELLIS, J.J., concur.

BROWN, J., dissents.

TERRELL, J., not participating.

---

ON REHEARING.

Opinion filed September 28, 1932.

DAVIS, J.—On April 19, 1932, the final decree appealed from in this case was affirmed by a majority of this Court, one justice dissenting and one justice not participating. See foregoing opinion rendered April 19, 1932, 141 So. 124. Thereafter a petition for rehearing was filed by the appellants. Rehearing was granted and argument had before the Court en banc. The case is now before us for disposition on rehearing.

The petition for rehearing takes exception to certain portions of the Court's opinion, wherein it is alleged there was an erroneous statement of some of the facts. For the purpose of correcting any such erroneous statement of the facts, the following re-statement of them is now made:

A man named Patterson died in Dade County over twenty years ago, leaving his widow and a minor daughter surviving him. At the time of his death he owned title to the lands involved in this foreclosure suit. A Doctor Jackson of Miami was appointed guardian for the minor child by

the Probate Court of Dade County. Thereafter, the guardian filed a petition for leave to sell real estate in which the minor child had an interest, which leave was granted.

The order entered by the County Judge authorized the guardian to sell "all the right, title, interest and claim of Annie Lester Patterson, a minor," in the property in question. The guardian reported that he had sold the property to George E. Merrick for $20,000, to be paid on the following terms and conditions:

"Two Thousand Dollars ($2,000) cash and Eighteen Thousand Dollars ($18,000) in five (5) years, together with interest at the rate of Eight Percent. (8%) per annum, payable semi-annually on all deferred payments; said deferred payments to be secured by a purchase money mortgage on said property, which said sum was paid for the entire title to the said property, two-thirds of which the said Annie Lester Patterson, a minor, is entitled to receive and will receive, and the other one-third of the said Twenty Thousand Dollars ($20,000) being paid to Jessie B. Markley, formerly Jessie B. Patterson, widow of Samuel L. Patterson and mother of Annie Lester Patterson, a minor."

The County Judge entered an order upon the foregoing report of sale and confirmed it. This order contained a provision which read as follows:

"That James M. Jackson in his capacity as guardian of Annie Lester Patterson, a minor, be and he hereby is authorized and empowered to execute and deliver a deed of conveyance to the said George E. Merrick, conveying all of the right, title and interest owned by the said Annie Lester Patterson, a minor, in and to the above described property and to take back a purchase money mortgage constituting a first lien against the property for all deferred payments."

Pursuant to this order a single deed was executed by Jackson as guardian, joined by the widow, Mrs. Markley, and her husband. This single joint deed was made and delivered to George E. Merrick as grantee. In exchange

therefor Merrick paid the $2,000 in cash and executed and delivered one note payable to James M. Jackson, Jr., as guardian of the estate of Annie Lester Patterson, a minor, for $12,000 payable five years after date, and another note payable to Jessie B. Markley for $6,000. maturing on or before five years after date.

To secure both and each of said purchase money notes, Merrick executed *one* purchase money mortgage to James M. Jackson, Jr., as guardian of the estate of Annie Lester Patterson, a minor, and Jessie B. Markley, individually. This was in literal compliance with the order of the Court which had authorized delivery of the deed upon the taking back of *a* purchase money mortgage to secure "all deferred payments."

This original purchase money mortgage was misplaced and never filed for record. Thereafter, in order to evidence the terms and conditions of the misplaced mortgage, Merrick executed *two* mortgages, each dated August 4, 1923, each acknowledged September 30, 1926, identical in their terms, one of them being executed to James M. Jackson, Jr., as guardian of Annie Lester Patterson, a minor, and the other being executed to Jessie B. Markley, individually. The bill of complaint alleges and the lower Court in effect found that the execution of these *two* subsequent mortgages was in order to *evidence* the terms and conditions of the misplaced *single* mortgage which had originally been executed for the purpose of securing "all deferred payments" on the land which Merrick was purchasing from Annie Lester Patterson, a minor, and Jessie B. Markley, individually, as joint grantors.

The original purchase money notes were not paid at their maturity. In the meantime, Annie Lester Patterson had become of age and married Fred W. Warner. In consequence of the non-payment of the notes Jessie B. Markley,

the widow, and Annie Lester Patterson, instituted suit for foreclosure of the original purchase money mortgage.*

While the new mortgages which had been executed by Merrick, as hereinbefore stated, were referred to in the bill for foreclosure, it is specifically shown that they were so referred to only for the purpose of evidencing the terms of the original mortgage as a basis for its re-establishment and foreclosure.

All of the defendants in the foreclosure case claim interests in the property through George E. Merrick. George E. Merrick in turn acquired his title through the deed which had been executed on behalf of the minor by her guardian, joined in by Mrs. Markley and her husband.

The answer of the defendants merely deny the priority of complainants' claim to foreclosure as against their respective interests. No attempt was made by any of the defendants *in their pleadings* to assert that the two mortgages which had been subsequently executed by Merrick were given for any other purpose than to evidence the terms of the original mortgage. No question of merger of the original mortgage, or of its release, by reason of the execution and delivery of the two new mortgages was therefore presented by the pleadings on behalf of the defendants.

Just before the trial the original unrecorded mortgage was found. This mortgage upon being properly identified was thereupon introduced in evidence. The Chancellor entered a decree foreclosing the original mortgage and adjudged that the lien thereof was superior to the claims and interest of George E. Merrick, and each and every of the defendants in the case, all of whom were claiming under him.

The defendants appealed from this final decree, which

---

*Both were married when the suit was brought and their husbands were joined therein as parties complainant, the guardian for the minor having in the meantime made his accounting and been discharged.

appeal resulted in the previous affirmance of the decision of the lower Court.

The Chancellor held that under the facts and circumstances presented by the record, defendants were charged with notice of the existence of the unrecorded purchase money mortgage, and that the lien of such original purchase money mortgage had not become extinguished because of the giving by Merrick and the filing for record of the two subsequent evidentiary mortgages whose terms appear to be slightly variant from those of the original mortgage. This Court heretofore sustained the Chancellor in such findings. Our further consideration of the case on rehearing confirms our view heretofore expressed to the effect that the Chancellor was correct in so holding.

No new purchase money notes were ever given, but it appears that the *debt* which was enforced through the decree of foreclosure was the original purchase-money debt evidenced by the original purchase-money notes, which were required to be given under the order authorizing the conveyance by the guardian of the minor's title. The entire transaction, so far as the minor was concerned, constituted a sale of the minor's real property which, in order to be valid, was required to strictly comply with the order of the Court permitting and authorizing such sale. The order authorizing the guardian to sell for money and to take a first lien purchase money mortgage to secure deferred payments. This being true, there could not have been any novation by the act of the guardian alone without the further order of the Probate Court. Consequently, appellants' contentions as to merger and novation must fail, not only because of this pertinent circumstance, but for the additional reason that no such question was raised or presented on behalf of the defendants by their pleadings.

The Chancellor evidently found, and this Court in its first decision held, that the guardianship proceedings, to-

gether with the guardian's deed, constituted one single muniment of title. The guardian's deed could not lawfully have been executed and delivered by the guardian without the execution and delivery of the notes and first lien mortgage evidencing and securing the unpaid purchase money. Every assertion of the existence of the guardian's deed and of its validity necessarily includes an assertion of the existence of the purchase money notes and first lien mortgage securing them, the existence of which is indispensable to sustain the validity of the guardian's deed.

The Chancellor found that notice to defendants existed from the circumstances shown of record, although the Chancellor referred to this notice as "constructive notice" instead of "implied actual notice." The term employed to denote it is not vital to the correctness of the Chancellor's decision. It is the fact of notice and not the name given to it which is binding on the appellants. Law writers and judges frequently refer to any kind of imputed notice which is charged to another by reason of circumstances binding on him, whether actually known to him or not, as "constructive notice." In a broad sense the term "constructive notice" is frequently used in a loose way to describe what is in *strictissimis verbis* merely "implied actual notice."

In our previous opinion we pointed out the difference which exists as a matter of law between *constructive* notice and *implied actual* notice. We did not hold that the County Judge's records were *constructive* notice. That point was particularly pointed out and the distinction drawn between *constructive notice* and *implied actual notice* as applied to the facts of this case, but implied actual notice is as much actual notice in law as expressed notice would be. Therefore, if actual notice of the unrecorded mortgage would have prevented the defendants from being

bona fide purchasers without notice, then such actual notice may be implied as well as express.*

One of the grounds for rehearing is that "if the infant, Annie Lester Patterson Warner, must be protected due to infancy, that the same reasoning does not apply to the adult, Jessie B. Markley." The answer to this contention is that the Court has not held that Annie Lester Patterson Warner should be protected on account of infancy, but on the ground that there was implied actual notice of the unrecorded mortgage securing payment of the purchase price of her interest by reason of the fact that an examination of the county judge's records comprising the chain of title would have disclosed both the mortgage interest of the minor and the mortgage interest of the adult.

Actual notice of both the mortgage interest of the minor and the mortgage interest of the adult is permissibly implied from the fact that the chain of title discloses a guardian's deed under which the defendants necessarily have to claim part of their title at least. The law presumes that as reasonably prudent purchasers of property they examined the proceedings which were had, and which were necessary to support the validity of, the guardian's deed conveying the interest of the minor in the property.

It would have been absolutely impossible under the facts of this case for the records to have been examined by anyone without his learning of the mortgage which was required to be taken by the guardian to secure the unpaid purchase price for the land, covering the adult's as well as the minor's interest in such purchase price. The guardian's report affirmatively showed that the property was intended to be sold and was sold *in solido*. The plan of sale was plainly shown to be that the entire title should pass by a

*The holding in Rambo vs. Dickenson, 92 Fla. 758, 110 Sou. Rep. 352, is in entire harmony with this view if *implied* actual notice is the legal equivalent of *express* actual notice, as we hold that it is.

deed from the guardian and the adult, and that the interest of both when conveyed should be encumbered by a first lien purchase-money mortgage back to them securing the payment of the unpaid purchase price.

The Chancellor passed on the question of actual notice as a question of fact. He was warranted in finding that implied actual notice of the unrecorded mortgage existed as a matter of fact from the circumstance that an examination of the guardianship proceedings must necessarily have disclosed the existence of the unrecorded mortgage sought to be foreclosed.

The case is a hard case, it is true. Someone must lose. The Chancellor held in effect that if anyone was negligent it was the defendants who failed to examine the guardianship proceedings, though the mortgagees were likewise negligent in not recording the purchase-money mortgage which they took to secure the unpaid purchase price. No circumstance was shown undertaking to excuse the defendants from their failure to examine the guardianship proceedings. Had the guardianship records been lost or destroyed, or other circumstances of that kind been made to appear, the Chancellor might have been precluded from finding *as a fact* that there was implied actual notice of what the guardianship proceedings showed. But in the absence of such proof, the Chancellor was entitled to indulge the presumption that the guardianship records being in existence, and open for inspection, were actually examined, and being so examined that knowledge of the facts they disclosed was ascertained by the defendants, and that therefore the defendants took their title with knowledge of the unrecorded purchase money mortgage outstanding against it in favor of the appellees.

It follows from what has been said that the Chancellor properly entered a decree of foreclosure in favor of the appellees, and that our previous decision affirming such

decree should be re-adopted and adhered to on this re-hearing.

It is therefore ordered that the decree appealed from be re-affirmed on rehearing.

BUFORD, C.J. AND WHITFIELD, J., concur.

ELLIS, J., agrees to denial of rehearing.

BROWN, J., dissents.

TERRELL, J., not participating.

ON MOTION TO RECALL MANDATE OF THE SUPREME COURT FOR THE PURPOSE OF DIRECTING THE LOWER COURT TO VACATE AND SET ASIDE FINAL DECREE FOR THE PURPOSE OF AMENDING THE PLEADINGS IN THE LOWER COURT.

Opinion filed December 2, 1932.

PER CURIAM.—An appeal in equity is but a step in the cause. Palm Beach Estates v. Croker, (decided by this Court on Aug. 31, 1932) 143 Sou. Rep. 792. Where a final decree of foreclosure is appealed from, and is on the appeal affirmed, the affirmation is conclusive as to the right of the complainant in foreclosure to have his lien enforced by foreclosure sale for the amount of the decree as affirmed by the appellate court, and the foreclosure operates to enforce the mortgage as against all defenses that were asserted, or that might have been asserted by the defendants by appropriate pleadings prior to the entry of the final decree adjudicating the foreclosure.

But a court of equity at all times retains jurisdiction to do equity in the *enforcement* of a foreclosure decree rendered by it, until after a sale under it is made and confirmed. And for the purpose of doing equity between the parties as to the enforcement of the decree, such court of equity, even after final decree of foreclosure, may still entertain such further appropriate proceedings as may directly relate to the character and extent of enforcement of the decree by sale. And this is true, even after affirmation

of the final decree of foreclosure by an appellate court, See authority hereinafter cited.

This permissible procedure includes the right of the Court below, after mandate affirming a foreclosure decree is lodged with it, to entertain on the basis of special and peculiar equities asserted, appropriate supplementary proceedings filed by the defendants in the cause, having for their object the securing of an equitable right to redeem their lands *from the decree itself* prior to actual sale, in order to allow the defendants to have the benefit of a covenant for partial releases imposing a duty to permit partial redemption that is in equity and good conscience still binding on the mortgagee, unless that question was expressly or impliedly adversely decided in the final decree itself, so that such equitable claim may be said to have become concluded by the affirmance of the final decree.

Our affirmance of the final decree of foreclosure in this case (See foregoing opinion rendered April 19, 1932, 141 Sou. Rep. 124, and opinion rendered September 28, 1932, 143 Sou. Rep. 648), was not intended by this Court to foreclose or cut off any special or peculiar equities the appellants might have obtained by reason of such affirmance, to redeem their individual properties according to special covenants which may still be binding on the mortgagee in a court of conscience. So without at this time undertaking to adjudicate or decide whether or not any such binding covenants yet exist, or whether or not appellants have waived them if they did exist, we simply construe our own judgment of affirmance and mandate thereon, as not having been intended by this Court to cut off the consideration by the Court below of special and peculiar equities which appellants may have become entitled to assert for the protection of their own individual right to redeem from the foreclosure decree, their individual properties subject thereto, under the same circumstances that

such individual properties could have been released from the mortgage itself before the final decree was entered.

The recall of the mandate is not necessary because the court below is not prohibited by the existing opinion and mandate from considering and deciding, on equitable principles, whether or not the appellants should be now permitted to redeem their individual properties from the foreclosure decree, by reason of the special and peculiar equities which may exist, that would render the execution of that decree by foreclosure sale as originally ordered, unjust and inequitable.

This is a different proposition from authorizing the reopening of the final decree itself in order to permit a covenant for partial releases to be pleaded as a matter of right, by way of defense.

The proposition we decide now is simply that a court of equity, having jurisdiction at all times over the enforcement of its own decrees, until they have been actually executed, may stay or modify, or may direct the enforcement of its decrees in a particular way, when necessary to prevent a miscarriage of justice, or may alter the method of enforcement in order to accord with special and peculiar equities which have arisen.

Such special and extraordinary powers of the court, being vested in it solely for the purpose of preventing inequitable consequences from following the enforcement of an admittedly proper decree, cannot be invoked as a matter of right, but must depend upon the demonstration of some special and peculiar equity which when established or admitted, would give rise to a right to have the enforcement of a decree altered, upon such terms and conditions as the court may determine should be complied with by the petitioner, in order to do equity on his part, so as to prevent a miscarriage of justice on either side by the requirement

of an inequitable thing, merely because it had originally been decreed that way.

A court of chancery in granting relief of the kind just mentioned, does not act as a court of errors to examine or reverse its previous decree, but it treats all the previous proceedings as valid, and acting on special and peculiar equities made to appear, grants relief to the petitioner against the consequences of enforcing the decree itself as rendered, when under the circumstances shown, the rights acquired by the opposite party under that decree, cannot be retained by him in good conscience, exactly as granted. For the theory upon which the exercise of such powers by equity court rests, see Bank of Kentucky v. Hancock, 6 Dana (Ky.) 284, 32 Am. Dec. 76.

We conclude that the recall of the mandate, as applied for by the motion now before the Court, is not necessary to enable the movants to present and have considered an appropriate petition seeking to obtain the benefit of equities which may have arisen in their behalf by virtue of the decree of this Court affirming the enforceability of the mortgage that was lost when the pleadings were made up. And without expressing any opinion whatsoever on the merits of movants' claim as referred to in the proceedings now before the Court, we construe our own opinion, and our own judgment and mandate, as having been intended not to operate to the prejudice of appellants' right to have a claim such as they seek to have adjudicated, considered on its merits, according to equitable principles which may justly control its final disposition.

While there was no fraud committed by the appellees, either actually or constructively, in obtaining an affirmance of the final decree appealed from, yet the pleadings on appellees' part shown in the transcript did not truly represent the real mortgage which was actually foreclosed. The real mortgage was lost when the original bill for fore-

closure was filed. Nevertheless, the relief was granted on a bill brought to foreclose the original mortgage on the basis of certain evidentiary mortgages pleaded, which, as developed later, when the original mortgage was found, did not correspond in all respects with the original mortgage as to certain special covenants. We think this peculiar circumstance brings the present situation within the spirit and intent of the rule followed in Bank of Kentucky v. Hancock, *supra*, which was to the effect that relief might be granted even as against rights asserted under an appellate court's mandate, when equitable consideration require it.

Motion to recall mandate denied, without prejudice to consideration of appropriate proceedings in court below.

WHITFIELD, P.J., AND TERRELL AND DAVIS, J.J., concur.

BROWN, J., concurs in the opinion and judgment.

Filed under Rule 21A.