CAMPBELL, Acting Chief Judge,
dissenting.
I agree "with my colleagues that the judgment on appeal should be reversed but disagree as to the directions to the trial court on remand. I conclude that on remand judgment should be entered declaring the Lafitte mortgage superior to the Gigliotti mechanic’s lien. I reach this conclusion because I am persuaded by the record before us, which includes all of the recorded title documents pertinent to this case, that appellee Gigliotti was afforded constructive notice and/or implied actual notice of the existence of the Lafitte mortgage.
The seminal Florida case on the character of notice that is afforded by recorded documents is Sapp v. Warner, 105 Fla. 245, 141 So. 124 (Fla.), affirmed, 105 Fla. 245, 143 So. 648 (Fla.1932). In that case, our supreme court stated, in pertinent part, as follows:
Notice is of two kinds, actual and constructive. “Constructive notice” has been defined as notice imputed to a person not having actual notice; for example, such as would be imputed under the recording statutes to persons dealing with property subject to those statutes. “Actual notice” is also said to be of two kinds: (1) Express, which includes what might be called direct information; and (2) implied, which is said to include notice inferred from the fact that the person had means of knowledge, which it was his duty to use and which he did not use, or, as it is sometimes called, “implied actual notice.” Constructive notice is a legal inference, while implied actual notice is an inference of fact, but the same facts may sometimes be such as to prove both constructive and implied actual notice.
The principle applied in cases of alleged implied actual notice is that a person has no right to shut his eyes or ears to avoid information, and then say that he has no notice; that it will not suffice the law to remain willfully ignorant of a thing readily ascertainable by whatever party puts him on inquiry, when the means of knowledge is at hand.
[[Image here]]
In several jurisdictions the rule is that purchasers and creditors are charged only by construction with notice of the facts actually exhibited [emphasis in original] by the record made under the recording statutes, and not with such facts outside of the record itself, as might have been ascertained by inquiries which an examination of the record would have induced a prudent man to make.

But the rule supported by the best authority is that the record is constructive notice to creditors and subsequent purchasers not only of its own existence and contents, but of such other facts as those concerned with it would have learned from the record, if it had been examined, and inquiries suggested by it, duly prosecuted, would have disclosed.

If, in the investigation of a title, a purchaser, with common prudence, must have been apprised of another right, notice of that right is presumed as a matter of implied actual notice.
[[Image here]]
“Constructive notice,” as we have heretofore pointed out, is an inference the law itself draws, and which cannot be refuted when the facts giving rise to it are made to appear. “Implied ’ actual notice,” on the other hand, is an inference of fact which may be drawn by the court as a matter of law, when warranted by the circumstances of a particular case calling for its application in order to do equity.
As has been stated by the Court of Civil Appeals of Texas, in the case of Loomis v. Cobb, 159 S.W. 305, 307: “It is a familiar and thoroughly well-settled principle of realty law that a purchaser has constructive notice of every matter connected with or affecting his estate which appears by recital, reference, or otherwise, upon the face of any deed which forms an essential link in the chain of instruments through which he deraigns his title. The rationale of the rule is that any description, recital of fact, or reference to other documents puts the *847 purchaser upon inquiry, and he is bound to follow up this inquiry, step by step, from one discovery to another and from one instrument to another, until the whole series of title deeds is exhausted and a complete knowledge of all the matters referred to and affecting the estate is obtained. Being thus put upon inquiry, the purchaser is presumed to have prosecuted it until its final result and with ultimate success.... The rule of notice thus imputed is based upon the legal presumption that information has been communicated to or acquired by a party. The presumption is not conclusive but rebuttable_ It may be stated as a general proposition that in all instances of constructive notice belonging to this class, where it arises from information of some extraneous facts, not of themselves tending to show an actual notice of the conflicting right, but sufficient to put a prudent man upon an inquiry, the constructive notice is not absolute; the legal presumption arising under the circumstances is only prima facie; it may be overcome by evidence, and the resulting notice may thereby be destroyed. Whenever, therefore, a party has merely received information, or has knowledge of such facts sufficient to put him on an inquiry, and this constitutes the sole foundation for inferring a constructive notice, he is allowed to rebut the prima facie presumption thence arising by evidence; and if he shows by convincing evidence that he did make the inquiry, and did prosecute it with all the care and diligence required of a reasonably prudent man, and that he failed to discover the existence of, or to obtain knowledge of, any conflicting claim, interest, or right, then the presumption of knowledge which had arisen against him ■will be completely overcome; the information of facts and circumstances which he had received will not amount to a constructive notice. What will amount to a due inquiry must largely depend upon the circumstances of each case. If, on the other hand, he fail to make any inquiry or to prosecute one with due diligence to the end, the presumption remains operative, and the conclusion of a notice is absolute.”
In this case the inference of implied actual notice was warranted by the fact that the persons having constructive notice of the record of the guardian’s deed must in any event have looked to the proceedings which were necessary to support it, and accordingly must be charged with implied actual notice of what an inquiry suggested to a prudent man by those proceedings would have disclosed. There is nothing in the stipulation which inhibited the court from finding such implied actual notice as a matter of law from the facts before him in this case, since there was no showing that the inquiry suggested by the guardian’s proceedings was made, and the facts not discovered after the exercise of due diligence.
141 So. at 127-130 (emphasis supplied; citations omitted.)
Gigliotti entered into a contract with Executive Brands, Inc. to provide services and material for the improvement of real property of which Executive Brands was the record title holder. The real property in dispute is accurately described as the N ½ of the SW ⅜ of the NE ⅝ of Section 15, Township 34 South, Range 17 East in Manatee County, Florida. The official records of Manatee County undisputedly show that Executive Brands acquired title to that property from H.A. Martin (Appellant’s father) by warranty deed executed on May 25,1989, and recorded in the public records of Manatee County on May 26, 1989, in Official Record Book 1260, page 2025. That recorded deed also bears the Clerk of the Circuit Court’s document number 318640.
The public records further show that simultaneously with the execution and recording of that deed of conveyance, Executive Brands executed a mortgage to H.A. Martin as mortgagee securing a promissory note in the principal amount of $195,000.00. That mortgage was recorded in Official Record Book 1260, page 2026 of the public records of Manatee County on May 26, 1989. It bears the clerk’s document number 318641. Both the deed and the mortgage are time stamped by the clerk’s office as having been filed and recorded at 4:36 p.m. on May 26, 1989. The Lafitte mortgage is a standard printed form *848 mortgage with blank spaces for the parties’ names and property descriptions. The problem of the respective priority of Lafitte’s mortgage and Gigliotti’s claim of hen presented in this appeal arises because in the blank space left in the mortgage for the addition of the description of the property being mortgaged, the following provisions were typed:
N ⅜ of SW ⅝ of NE ⅝ of Section 25, Township 34 South, Range 17 East, less the SW ⅛ thereof.
Mortgagee agrees to release one-third of the above described property to be selected by the Mortgagor from the terms of said note and mortgage, upon each payment of principal due on the mortgage in the amount of $65,000.00. (Said released parcels to be either the NW ¾ or the NE ⅛ or the SE ⅜ of the N ½ of SW ⅝ of NE ⅛ of Section 15, Township 34 South, Range 17 Ease [sic].)
If all or any part of the property under mortgage or any interest in it is sold or transferred without Mortgagee’s prior written consent, Mortgagee may, at hos [sic] option, require immediate payment in full of all sums secured by this mortgage.
(Emphasis supplied.) Thus, there is an obvious discrepancy in the description of the property subjected to the mortgage because the mortgage alternatively describes property as being in the N ½ of SW ⅜ of NE ⅝ of Section 2 5, Township 34 South, Range 17 East and the N ⅜ of SW ⅝ of NE ⅝ of Section 15, Township 34 South, Range 17 East.
When Executive Brands breached its contract with Gigliotti, Gigliotti then recorded a claim of lien against Executive Brands’ property on January 11, 1991. Since Gigliotti’s claim of lien was recorded subsequent in time to Lafitte’s mortgage, Lafitte’s mortgage must be deemed superior unless Gigliotti was not on notice as to the Lafitte mortgage. (Lafitte was assigned the mortgage from her deceased father’s estate on June 29, 1990. The assignment also incorrectly identified the property as being in Section 25.) Under the reasoning of Scupp, I would find that Gigliotti was afforded adequate notice of Lafitte’s mortgage by reason of its recording. As the majority points out, the fact that Gigliotti did not inspect or rely upon the public records in recording its claim of lien is irrelevant if Lafitte’s mortgage or the evidence suggested by it is sufficient to put Gigliotti on notice. I conclude it was sufficient because of several indisputable facts. There is an obvious discrepancy within the four corners of the mortgage itself that should have led to further inquiry as to the actual property being mortgaged. (The property, if it was actually in section 25, would have been in the middle of the Manatee River.) If Executive Brands’ chain of title had been properly ascertained, it would be obvious from recording dates, times, document numbers and recording book pages that Lafitte’s mortgage was a purchase money mortgage. I believe the trial judge was misled as to what a prudent title search would have revealed because he believed that documents affecting real property are indexed by property descriptions. While abstractors and title companies may and probably do maintain indices according to property descriptions, the “Official Records” which afford notice are statutorily mandated to be indexed alphabetically by the names of the parties to the documents. § 28.222(2), Fla. Stat. (1989). Therefore, if Gigliotti, in attempting to perfect its claim of lien against Executive Brands, had searched that alphabetical index, the mortgage from Executive Brands would have been revealed. When what was then obviously a purchase money mortgage was compared to the deed into Executive Brands, the description discrepancy would have been revealed and Gigliotti would have been in notice.
I would reverse the judgment insofar as it determined Lafitte’s mortgage to have been inferior to Gigliotti’s claim of hen and, on remand, direct an opposite result.