906 So.2d 1112 (2005)
PRIME WEST, INC., and Prime West Condominium Association, Appellants,
v.
Lorenzo CAMARGO, et al., Appellees.
No. 3D04-471.
District Court of Appeal of Florida, Third District.
May 11, 2005.
Rehearing and Rehearing Denied August 10, 2005.
Cohen/Fox and Mario M. Ruiz, Miami, for appellants.
Koppen, Watkins, Partners & Associates; Langbein & Langbein and Evan J. Langbein; Jorge A. Lopez, Miami, for appellees.
Before GREEN, RAMIREZ, and SUAREZ, JJ.
Rehearing and Rehearing En Banc Denied August 10, 2005.
SUAREZ, J.
Prime West, Inc. and Prime West Condominium Association appeal from an order requiring removal of a fence which blocks Appellees-Camargos' ingress and egress from the Camargos' property to *1113 N.W. 108th Avenue via N.W. 16th Street and deeming N.W. 16th Street a public road. We affirm that portion of the trial court's order requiring removal of the fence and reverse solely that portion of the order deeming N.W. 16th Street a public road.
Lots 5, 6, 7, and 8 of an unrecorded plat known as Truman City were, at one time, part of an extensive area of property owned by one individual. Starting in the 1950's, the lots were sold to various individuals and entities and continued to change hands over the years. Lots 5, 6, 7, and 8 run west to east of each other with Lot 5 being the western-most lot and Lot 8 being the eastern-most lot. On the east side of Lot 8, running north and south, is N.W. 108th Avenue. The piece of property that is at the heart of this litigation is a fifty-foot-wide strip of land which connects Lot 5 to N.W. 108th Avenue and abuts the north end of Lots 6, 7, and 8.
In 1988, Waldorf Properties purchased from Brody both lot 5 and, in a separate deed, the fifty-foot-wide strip of land referred to as N.W. 16th Street.[1] The deed for the fifty-foot-wide strip specifically included a covenant running with the land which stated that upon written request from the grantor (Brody), and without any further consideration, the grantee (Waldorf) would convey the property to Dade County for road right-of-way purposes. The Brody family kept ownership of property immediately north of the fifty-foot piece of land. In 1990, Appellees-Camargos purchased Lot 6 from United Companies Financial Corp. In 1991, Waldorf properties conveyed Lot 5 and the fifty-foot-wide parcel to Ortega subject to the covenant running with the land. Lots 7 and 8 were deeded to Appellees-Union American in 2000.
In 1995, Ortega attempted to develop his property for commercial purposes. Dade County required a green space before it would approve the development. Ortega decided that the fifty-foot-wide strip of property would meet the Dade County green space requirement and obtained a release from Brody of the covenant running with the property. As part of the release, the Brody Family Limited Partnership was granted a perpetual nonexclusive access easement over and across the strip of property in question; thereby, giving the property still owned by the Brody partnership access to N.W. 108th Avenue. Mr. Ortega then deeded both Lot 5 and the fifty-foot strip of property to Prime West, Inc., which developed the commercial condominium complex on Lot 5.
The Camargos used the roadway referred to as N.W. 16th Street to gain access from Lot 6 to N.W. 108th Avenue from the time they purchased the property in 1990. They continued to use the roadway until 1997, when Prime West-Appellant built a fence blocking their access to the fifty-foot wide strip of property. The Camargos then brought suit for declaratory relief and requested that the trial court grant them an injunction which would result in the removal of the fence. They sought a common law or statutory easement or right-of-way for road purposes which would give them the right to traverse N.W. 16th Street. After a two-day non-jury trial, the trial court required Prime West, Inc. to remove the fence from blocking the Camargo property, and declared the strip of property known as N.W. 16th Street to be a public road. For the *1114 following reasons, this Court affirms, in part, the trial court's order and reverses only that portion deeming N.W. 16th Street to be a public road.
The general rule is that when an owner conveys part of his or her property, the owner impliedly grants all those apparent easements which existed and which were used for the benefit of the part that was conveyed. Dinkins v. Julian, 122 So.2d 620 (Fla. 2d DCA 1960)(citing Thompson on Real Property, § 392). Therefore, when the Camargos took title to their property, they took it with all the benefits and burdens which existed at the time of the sale. "The implied easement [was] gathered from the circumstances surrounding the conveyance and ... mean[s] that whatever [was] obviously in use as an incident or as an appurtenance [passed] by implication when the land [was] sold." Dinkins, 122 So.2d at 623. Since the Camargos took title to their property along with the ability to traverse N.W. 16th Street to access N.W. 108th Avenue, and as prior landowners had the same access to the same property, such access was materially beneficial to the use and enjoyment of their lot, and they are entitled to a private easement for the continued use of N.W. 16th Street. Childs v. Weissman, 432 So.2d 604 (Fla. 3d DCA 1983); Reiger v. Anchor Post Prods., Inc., 210 So.2d 283 (Fla. 3d DCA 1968); Dinkins, 122 So.2d at 620.
Moreover, the evidence revealed that Prime West was in a position to learn of the existence of N.W. 16th Street simply by inquiring into the facts known at the time of the purchase of their property. As such, it had implied notice of the rights of the successor-in-interest to the lot now owned by the Camargos. Zaucha v. Town of Medley, 66 So.2d 238 (Fla.1953). As the Florida Supreme Court stated in Zaucha, 66 So.2d at 240:
In some jurisdictions the rule is that purchasers ... are charged only by construction with notice of the facts actually exhibited by the record made under the recording statutes, and not with such facts outside of the record itself as might have been ascertained by inquiries which an examination of the record would have induced a prudent man to make. Houston Oil Co. of Texas v. Lane, Tex.Civ.App., 200 S.W. 216; Neas v. Whitener-London Realty Co., 19 [119] Ark. 301, 178 S.W. 390, L.R.A.1916A, 525, [Am.]Ann.Cas.1917B, 780. See also, Gilchrist v. Gough, 63 Ind. 576, 30 Am.Rep. 250; Taylor v. Harrison, 47 Tex. 454, 26 Am.Rep. 304.
But, this is not the law in Florida. As the rule is stated in Sapp v. Warner, 105 Fla. 245, 141 So. 124, 127, affirmed 105 Fla. 245, 143 So. 648, motion for rehearing denied, 105 Fla. 245, 144 So. 481, `* * * the record is constructive notice to ... subsequent purchasers not only of its own existence and contents, but of such other facts as those concerned with it would have learned from the record, if it had been examined, and inquiries suggested by it, duly prosecuted, would have disclosed * * *'. [e.s.]
For the above reasons, we find that the trial judge's well-reasoned decision granting injunctive relief for removal of the fence blocking ingress and egress on N.W. 16th Street to N.W. 108th Avenue is affirmed. We reverse the trial judge's finding which deems N.W. 16th Street a public road as dedication to the public was never pled by the parties or proven below. Hancock v. Tipton, 732 So.2d 369 (Fla. 2d DCA 1999). The order below is otherwise affirmed in all respects.
Affirmed in part, reversed in part.
NOTES
[1] Most of the deeds in question, and throughout the history of the property, contain a description of the fifty-foot-wide strip of property in question as N.W. 16th Street and the unrecorded plat for the area which is known as Truman City included this strip of land as being designated N.W. 16th Street.