422 So.2d 911 (1982)
Jerry B. SCHREIBER, Personal Representative of the Estate of Theadores W. Ross, Appellant,
v.
CHASE FEDERAL SAVINGS & LOAN ASSOCIATION, Luis Perez, and Gladys Perez, His Wife, Appellees.
No. 80-1213.
District Court of Appeal of Florida, Third District.
October 12, 1982.
*912 Jerry B. Schreiber, Joseph A. McGowan, Miami, for appellant.
Therrel, Baisden, Stanton, Wood & Setlin and Frank R. Gramling, John H. Duhig, Miami, for appellees.
Before HUBBART, C.J., and BARKDULL, HENDRY, SCHWARTZ, NESBITT, BASKIN, DANIEL S. PEARSON, FERGUSON and JORGENSON, JJ.

ON MOTION FOR REHEARING EN BANC GRANTED
SCHWARTZ, Judge.
The court has granted the appellant's motion for rehearing en banc, because, as demonstrated by the uncontested factual recitals in the dissenting opinion, the panel majority's affirmance has created a lack of uniformity within the meaning of Fla.R. App.P. 9.331(a)[1] in this court's decisions in this case and in Florida National Bank & Trust Co. at Miami v. Havris, 366 So.2d 491 (Fla. 3d DCA 1979).
*913 Upon consideration of the merits, we adhere to Havris and adopt the dissenting panel opinion as the opinion and decision of this court.[2],[3] Accordingly, the panel decision is vacated, the judgment below is reversed, and the cause is remanded with directions to cancel the deeds to Cournoyer and the Perezes and the Chase mortgage and for such further proceedings as are not inconsistent herewith.
Reversed and remanded.
HENDRY, DANIEL S. PEARSON and JORGENSON, JJ., concur.
FERGUSON, Judge (concurring in part, dissenting in part).
I concur in the results, deducing that the original panel could have affirmed the trial court only by departing from Florida National Bank and Trust Co. at Miami v. Havris, supra, which holds that a deed to a grantee not related by blood or marital affinity to grantor, in consideration for love and affection, is invalid and of no force and effect. Applying the rule of law to the undisputed facts of this case, cancellation of the deed is imperative.
*914 On the question what is the standard for en banc review, I agree with both dissenting opinions. Decisional conflict, as articulated in Nielsen v. City of Sarasota, 117 So.2d 731 (Fla. 1960) and discussed in the committee note to Fla.R.App.P. 9.331, is the ground for rehearing en banc. The proceeding is an extraordinary one, intended to be used sparingly. I specifically disagree with the standard suggested by Judge Schwartz  decisions are so inconsistent and disharmonious that they would not have been rendered by the same panel of the court  because it calls for speculation and is facilitative to excessive use of the en banc hearing.
NESBITT, Judge (dissenting):
I am disturbed by the ambiguous scope of review announced by Judge Schwartz for granting rehearings en banc as well as its application to the present controversy.[4]
It is clear that Florida Rule of Appellate Procedure 9.331, authorizing en banc proceedings, is procedural in nature rather than a grant of substantive authority. State Farm Mutual Automobile Co. v. Judges, 405 So.2d 980 (Fla. 1981). Notwithstanding a possible constitutional infirmity in the en banc rule due to Article V, Section 4(a) of the Florida Constitution, which provides: "Three judges shall consider each case and the concurrence of two shall be necessary to a decision,"[5] its constitutionality is assumed.[6] Nonetheless, it is necessary to determine the purpose for the rule in order to understand its parameter.
There is nothing in Article V, Section 4 which expressly authorizes a district court of appeal to grant motions for rehearing en banc nor is there any express authority in Article V, Section 3, of the Florida Constitution authorizing the Supreme Court to delegate this function to the courts of appeal.
Under Article V, Section 4 of the Florida Constitution of 1956, the Supreme Court had discretionary jurisdiction to review a decision of a district court of appeal that conflicted with another district court of appeal. If the two decisions from the same district court of appeal conflicted, the decision that was later in time overruled the former. Little v. State, 206 So.2d 9, 10 (Fla. 1968). In 1972, the Constitution was changed authorizing the Supreme Court discretionary jurisdiction to resolve conflicts between decisions of any district courts of appeal. Art. V, § 3(b)(3), Fla. Const. 1972. The 1980 amendment restored the constitutional provision to its stature before 1972, when the Constitution first authorized the review of intradistrict conflicts.[7]
The purpose of Rule 9.331, authorizing en banc proceedings, is, therefore, to permit a district court to harmonize its own intradistrict conflict because the Supreme Court can no longer do so.[8] The en banc rule owes its existence then to the substitution of the district court's jurisdiction for that formerly exercised by the Supreme Court  consequently, the power to be exercised by a district court of appeal must be the same as formerly exercised by the Supreme Court. If the scope of review for granting en banc rehearings is broader than the standard utilized by the Supreme Court in the exercise of its discretionary jurisdiction, then it will extend to the district court of appeal an unconstitutional power never contemplated under any version of the judicial articles of the Florida Constitution from 1956 to date.
This interpretation of the rule gains additional support from the Committee Note to Rule 9.331 which states: "The ground, maintenance of uniformity in the court's decisions, is the equivalent of decisional conflict as developed by Supreme Court *915 precedent in the exercise of its conflict certiorari jurisdiction."[9],[10]
Of the many statements attempting to define "decisional conflict" in order to activate the discretionary jurisdiction of the Supreme Court, perhaps the most articulate comes from Nielson v. City of Sarasota, 117 So.2d 731 (Fla. 1960), where it is stated:
While conceivably there may be other circumstances, the principal situations justifying the invocation of our jurisdiction to review decisions of Courts of Appeal because of alleged conflicts are, (1) the announcement of a rule of law which conflicts with a rule previously announced by this Court, or (2) the application of a rule of law to produce a different result in a case which involves substantially the same controlling facts as a prior case disposed of by this Court. Under the first situation the facts are immaterial. It is the announcement of a conflicting rule of law that conveys jurisdiction to us to review the decision of the Court of Appeal. Under the second situation the controlling facts become vital and our jurisdiction may be asserted only where the Court of Appeal has applied a recognized rule of law to reach a conflicting conclusion in a case involving substantially the same controlling facts as were involved in allegedly conflicting prior decisions of this Court. Florida Power & Light Co. v. Bell, 113 So.2d 697 [Fla. 1959].
117 So.2d at 734. In Kyle v. Kyle, 139 So.2d 885 (Fla. 1962), decisional conflict was also articulated to exist when one decision is so disharmonious with the prior decision by the court on the same point that it may be said to have overruled the former.
When that test is applied to the present case, it is apparent that the requisite conflict does not exist between this decision and Florida National Bank and Trust Company at Miami v. Havris, 366 So.2d 491 (Fla. 3d DCA 1979) relied upon in the majority decision. The majority would apply the rule of law enunciated in Havris, supra, to the facts of the present case. However, under the second test in Nielson, supra, the rule of law must be applied to "substantially the same controlling facts." Clearly, the two cases differ in their controlling facts.
In Havris, there was a direct attack made upon the deed of conveyance, by the guardian of the property of the original grantor against the original grantee who was a niece of the incompetent grantor's housekeeper. It was clear that there was no relationship by either consanguinity or affinity sufficient to support adequate consideration between the original parties. For this reason, the court quite correctly found from the record that the deed between the immediate parties  the grantor and grantee, based solely on love and affection, was not supported by consideration.
In the present case, the grantor, Mrs. Ross, delivered a deed for love and affection to a nonrelative who was a "con man." When the deed in the present case was recorded, a third party, the Perezes, relying *916 upon the Marketable Title Act, Section 695.01, Florida Statutes (1979), gave valuable consideration to the con man in exchange for the deed. The purchaser then procured a purchase money mortgage from Chase Federal Savings and Loan Association. Mrs. Ross, the original grantor, brought an action against the original grantee (con man) as well as the third party purchaser and mortgage lender. The trial court granted a money judgment in favor of the grantor against the grantee; however, it refused to cancel the third party purchaser's deed. If this were a suit solely between Mrs. Ross and the con man, it would be unassailable that Havris would control. However, the present case does not concern the question of whether a deed given to a nonrelative is without consideration, but rather considers whether such a recitation places a third party purchaser on constructive, implied, or actual notice. Because Havris is concerned with the rights and remedies of immediate parties, in contradistinction to the rights and remedies of third party purchasers, any consideration of Havris, as directly conflicting with the present case, is erroneous.
Since the en banc rule is directed entirely to intradistrict conflict, to the extent that the minority opinion granting rehearing en banc relies upon apparent conflicts in the Supreme Court of Florida, or other districts, it is entirely misplaced. If the original majority decision indeed conflicts with any decision of the Supreme Court or that of another district court of appeal, then it is the prerogative of the Florida Supreme Court to review under the exercise of its discretionary jurisdiction.[11]
For these reasons, I dissent both as to the overbroad standard of review in the granting of en banc hearings announced by Judge Schwartz as well as to its application to the present controversy. The ambiguous standard announced by Judge Schwartz' opinion is vague to the point that it permits review upon an ad hoc basis, which generates concern for the lack of finality of a decision of the district court of appeal and prompts needless requests for rehearings en banc. No matter how well motivated the majority decision is, it is apparent that it has granted a second appeal to the appellant without a substantial basis therefor. Such action does not comport with the constitutional scheme for reviewing judgments of the circuit court by the district courts of appeal under Article V of the Florida Constitution.
We certify to the Supreme Court, pursuant to Article V, Section 3(b)(4) of the Florida Constitution and in accordance with Florida Rule of Appellate Procedure 9.331, this question of great public importance involving the proper scope of review to be applied in granting motions for rehearing en banc.
HUBBART, C.J., and BARKDULL and BASKIN, JJ., concur.
*917 HUBBART, Chief Judge (dissenting).
I join in Judge Nesbitt's dissenting opinion in this case. I, too, would vacate the order setting this cause for rehearing en banc for lack of any intradistrict conflict of decisions within this district  the necessary predicate for authorizing an en banc district court of appeal hearing under Fla.R.App. 9.331  and would reinstate the panel decision herein. I write separately, however, to point out that the entire thrust behind the adoption of Fla.R.App.P. 9.331 was to restrict en banc review by a district court of appeal solely to cases of intradistrict conflict of decisions. A review of this rule's history seems particularly appropriate in this case in view of the plurality's adoption herein of a standard for en banc review which does not require, by its terms, a showing of intradistrict conflict of decisions.

I
On August 15, 1978, then Chief Justice Arthur J. England, Jr. of the Florida Supreme Court entered an administrative order creating a Commission on the Florida Appellate Court Structure to be chaired by Mr. Justice Ben F. Overton of the Florida Supreme Court. Appointed to the Commission was a cross-section of the bench, bar and lay community in this state. The assigned task of the Commission was to conduct a thorough review of Florida's appellate court system and to make appropriate recommendations for change, if such were necessary. A subcommittee of this Commission, in turn, was subsequently formed by Mr. Justice Overton to look into the possibility of proposing an en banc rule of appellate procedure for district courts of appeal. This subcommittee, in turn, studied the problem at great length and went through innumerable drafts for a proposed en banc rule.

A
After extensive discussion and consideration of this subject, the Commission finally recommended in its March 13, 1979 report to Chief Justice England the following:
"RECOMMENDATION NO. 2:

The Commission recommends the adoption of a new appellate rule authorizing the district courts of appeal to sit en banc to resolve intradistrict conflicts of decisions or to consider cases of exceptional importance.
JUSTIFICATION:

The purpose of the proposed recommendation is to provide a formal procedural mechanism to permit the district courts to settle conflicts of decisions arising within the same district and to speak with one voice as a court on matters of exceptional importance.
Presently, the district courts hold ad hoc conferences to discuss problems of conflicts between panels and to determine whether a panel should recede from a prior written opinion of the court. This proposal will formalize that process and provide a method for securing the input of counsel to resolve cases worthy of en banc determination. Although conflicts of decisions in cases decided by the same district court do not often arise, this recommendation will serve the dual purpose of reducing the Supreme Court's work load and furthering the goal of making the district courts the courts of last resort in most instances.
The Commission has carefully studied a possible constitutional infirmity in the en banc rule. Article V, section 4(a), Florida Constitution, provides: `Three judges shall be necessary to a decision.' This provision might be construed to mean that district courts cannot constitutionally sit in panels larger than three judges. The Commission's studied opinion, however, is that such a rigid construction of Article V, section 4(a) is neither required, nor is it the most reasonable. A memorandum of law prepared in 1961 by Charles A. Carroll, former judge of the Third District Court of Appeal, addressed this very issue. Judge Carroll concluded that this constitutional provision sets only a minimum standard and does not prohibit en banc review by district courts of appeal. Notably, a similar construction *918 of a federal statute was necessary to permit federal circuit courts to hear cases en banc. The Commission adopts Judge Carroll's well-reasoned memorandum and incorporates it as part of this recommendation. [Appendix B omitted].
IMPLEMENTATION:
The Commission recommends adoption of the following appellate rule:
Rule 9.331
DETERMINATION OF CAUSES BY A DISTRICT COURT OF APPEAL EN BANC
(a) EN BANC MATTERS: GENERALLY. A majority of a district court of appeal may order that an appeal or other proceeding pending before the court be heard or reheard en banc. A district court of appeal en banc shall consist of the judges in regular active service on such court. En banc hearings and rehearings are not favored and ordinarily will not be ordered except (1) when such consideration is necessary to maintain uniformity in the court's decisions, or (2) when the proceeding involves a question of exceptional importance.

(b) HEARINGS EN BANC. A hearing en banc may be ordered only by a district court of appeal on its own motion. A party may not request an en banc hearing, and a motion seeking such a hearing will be stricken.
(c) REHEARING EN BANC. A rehearing may be ordered by a district court of appeal on its own motion or on motion of a party. Within the time prescribed by Rule 9.330 for filing a motion for rehearing, a party may move for an en banc rehearing solely on the ground that such consideration is necessary to maintain uniformity in the court's decisions; a motion based on any other ground will be stricken. A vote will not be taken on such motion unless requested by a judge on the panel which heard the cause, or by any judge in regular active service on the court; provided, that non-panel judges are under no obligation to consider such motion unless a vote is requested.
(1) REQUIRED STATEMENT FOR REHEARING EN BANC. A rehearing en banc is an extraordinary proceeding. In every case the duty of counsel is fully discharged without filing a motion for rehearing en banc unless the criterion set forth above is clearly met. In such instance, the above motion when filed by counsel shall contain the following statement:
I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decision(s) of this court and that a consideration by the full court is necessary to maintain uniformity of decisions in this court: (citing specifically the case or cases).
/s/ ________________
(2) FORMAL ORDER ON REHEARING EN BANC. An order on a motion for rehearing en banc will not be entered unless a rehearing en banc is granted. Such order may limit the issues to be reheard, require the filing of additional briefs, or set the cause down for additional argument." [emphasis added]. Id. at 2-1  2-4.

B
The Florida Supreme Court subsequently conducted a full hearing on the above en banc rule recommendation  along with the entire Commission report. Careful and thorough consideration was thereafter given to all the Commission's recommendations.

1
On April 2, 1979, Chief Justice Arthur J. England, Jr. made a formal report to the Florida Legislature which stated, in part, as follows:
"(4) En Banc hearings in district courts; three judge circuit court panels. The Court has approved the commission's co-ordinate recommendations concerning appellate procedures in the circuit and district courts, and following favorable legislative action on the other proposals in this report the Court will initiate rulemaking *919 proceedings to provide the district courts with en banc hearing authority (modified, however, to delete authorization for en banc hearings on matters other than intra-district conflicts) and to authorize circuit court judges to sit in panels of three to hear appeals from county courts. The justifications for these rule changes are adequately set forth in the commission's report." [emphasis added]. Id. at 21.

2
On September 20, 1979, the Florida Supreme Court issued the following opinion:
"Appended to this opinion is a new appellate rule designated as Florida Rule of Appellate Procedure 9.331 entitled `Determination of Causes by a District Court of Appeal En Banc.'
The Florida Appellate Structure Commission recommended that this Court adopt a new appellate rule authorizing the district courts of appeal to sit en banc to resolve intradistrict conflicts of decisions or to consider cases of exceptional importance and included a proposed rule for adoption in its report.
The Court has modified the en banc rule proposed by the Commission to limit its application to resolve intradistrict conflicts.
The justification for an en banc rule was set forth by the Appellate Structure Commission in its report as follows:
`The purpose of the proposed recommendation is to provide a formal procedural mechanism to permit the district courts to settle conflicts of decisions arising within the same district and to speak with one voice as a court on matters of exceptional importance.'" [emphasis added]. In re Rule 9.331, Determination of Causes by a District Court of Appeal En Banc, Florida Rules of Appellate Procedure, 374 So.2d 992-93 (Fla. 1979).
The rule appended to the decision is almost verbatim what is now Fla.R.App.P. 9.331. This rule, in turn, was modified by the Court on December 6, 1979, to its present form as it exists today. The Court stated in its opinion as follows:
"In our opinion of In Re Rule 9.331, Determination of Causes by a District Court of Appeal En Banc, Florida Rules of Appellate Procedure, 374 So.2d 992 (Fla. 1979), we initially adopted this rule and afforded all interested parties an opportunity to present their objections or suggestions to the Court not later than November 1, 1979. We have modified the rule in accordance with some of the suggestions received by the Court. The rule as modified and appended to this opinion shall take effect at 12:01 a.m., January 1, 1980.
In light of the adoption of SJR 20-C and SB 21-C by the Florida Legislature on November 28, 1979, jurisdiction of this proceeding is retained to consider further amendments to Rule 9.331 as may now be appropriate to permit en banc proceedings for matters other than Intradistrict conflict." [emphasis added]. In re Rule 9.331, Determination of Causes by a District Court of Appeal En Banc, Florida Rules of Appellate Procedure, 377 So.2d 700 (Fla. 1979).
The present Fla.R.App.P. 9.331, as finally adopted, provides as follows:
"RULE 9.331. DETERMINATION OF CAUSES IN A DISTRICT COURT OF APPEAL EN BANC
(a) EN BANC PROCEEDINGS: GENERALLY. A majority of the judges of a district court of appeal may order a proceeding pending before the court be determined en banc. A district court of appeal en banc shall consist of the judges in regular active service on the court. En banc hearings and rehearings shall not be ordered unless necessary to maintain uniformity in the court's decisions.

(b) HEARINGS EN BANC. A hearing en banc may be ordered only by a district court of appeal on its own motion. A party may not request an en banc hearing. A motion seeking the hearing shall be stricken.

*920 (c) REHEARINGS EN BANC.
(1) Generally. A rehearing en banc may be ordered by a district court of appeal on its own motion or on motion of a party. Within the time prescribed by Rule 9.330 and in conjunction with the motion for rehearing, a party may move for an en banc rehearing solely on the ground that such consideration is necessary to maintain uniformity in the court's decisions. A motion based on any other ground shall be stricken. A vote will not be taken on the motion unless requested by a judge on the panel that heard the proceeding, or by any judge in regular active service on the court. Judges who did not sit on the panel are under no obligation to consider the motion unless a vote is requested.
(2) Required Statement for Rehearing En Banc. A rehearing en banc is an extraordinary proceeding. In every case the duty of counsel is discharged without filing a motion for rehearing en banc unless the ground set forth in (1) is clearly met. When filed by an attorney, the motion shall contain the following statement:
I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decision(s) of this court and that a consideration by the full court is necessary to maintain uniformity of decisions in this court: (citing specifically the case or cases).
/s/ __________________
(3) Formal Order on Motion for Rehearing En Banc. An order on a motion for rehearing en banc shall be deemed denied upon a denial of rehearing or a grant of rehearing without en banc consideration. If rehearing en banc is granted, the court may limit the issues to be reheard, require the filing of additional briefs, and may require additional argument." [emphasis added].
The commentary to the rule specifically states, in part, as follows:
"The ground, maintenance of uniformity in the court's decisions, is the equivalent of decisional conflict as developed by Supreme Court precedent in the exercise of its conflict certiorari jurisdiction. The district courts are free, however, to develop their own concept of decisional uniformity." In Re Rule 9.331, Determination of Causes by a District Court of Appeal En Banc, Florida Rules of Appellate Procedure, 374 So.2d at 994.
Finally, on June 30, 1982, the Florida Supreme Court, in response to a petition filed by the Florida Conference of District Court of Appeal Judges, issued an opinion modifying Fla.R.App.P. 9.331, effective October 1, 1982, by adding the following underlined language to Fla.R.App.P. 9.331(a):
"(a) En Banc Proceedings: Generally. A majority of the judges of a district court of appeal participating may order a proceeding pending before the court be determined en banc. A district court of appeal en banc shall consist of the judges in regular active service on the court. En banc hearings and rehearings shall not be ordered unless necessary to maintain uniformity in the court's decisions. The en banc decision shall be by a majority of the active judges actually participating and voting on the case. In the event of a tie vote, the panel decision of the district court shall stand as the decision of the court. If there is no panel decision, a tie vote will affirm the trial court decision."
The Court in its opinion recounted the history of the development of Fla.R.App.P. 9.331 and emphasized, once again, that the central purpose of the en banc rule was to allow district courts of appeal to resolve intra-district conflict of decisions. Indeed, the Court pointed out that the rule was intended to supplant the Florida Supreme Court's former constitutional jurisdiction to review intradistrict conflict of decisions within a district court of appeal. See Art. V, § 3(b)(3), Fla. Const. (1979). That jurisdiction has since been deleted by constitutional amendment, see Art. V, § 3(b)(3), Fla. Const. (1981), and the en banc rule was part and parcel of that constitutional change. The Court stated in its opinion as follows:

*921 "First and foremost, we must emphasize that a direct and important interrelationship exists between the en banc rule and the new constitutional amendment which limits Supreme Court jurisdiction. See art. V, § 3, Fla. Const. The amendment substantially strengthened the position of the district courts of appeal as final appellate courts. The en banc rule is an essential part of the philosophy of the constitutional scheme embodied in the new amendment because the Supreme Court no longer has jurisdiction under the amendment to review intra-district conflict.

The appellate structure commission, which this Court established to study the efficiency of Florida appellate structure, recommended that intra-district conflict be resolved by the district courts of appeal sitting en banc, rather than by this Court. The commission also recommended that such an en banc procedure be implemented by court rule. In its study, [footnote deleted] the commission considered any possible constitutional infirmity of such a rule and concluded that no constitutional impediment existed. The commission also noted that the federal courts had given a similar construction and interpretation to almost identical language in the congressional act which established the United States Circuit Courts of Appeals and the resulting authority for each circuit to proceed en banc. [footnote deleted].
This Court agreed with the commission and concluded that an en banc rule as part of Florida's appellate structural scheme was appropriate and constitutional, particularly under the philosophy that the district courts should, to the extent possible, be final appellate courts. See In Re Rule 9.331, Determination by a District Court of Appeal En Banc, 374 So.2d 992, modified, 377 So.2d 700 (Fla. 1979). Justice Boyd disagreed with the majority and expressed his dissent on constitutional grounds. Id. at 994-95 (Boyd, J., dissenting). The constitutional amendment was thereafter presented to the legislature and, in turn, to the electorate of the state with the understanding that the district courts of appeal could sit en banc to resolve intradistrict conflict. In fact, under the new amendment, if intra-district conflict is not resolved within the district courts by en banc decision, totally inconsistent decisions could be left standing and litigants left in doubt as to the state of law. The new appellate structural scheme, including the en banc process, was intended to solve that problem and to provide litigants with a clear statement of the law within any given district." [emphasis added]. In Re Rule 9.331, Determination of Causes by a District Court of Appeal En Banc, Florida Rules of Appellate Procedure, 416 So.2d 1127, (Fla. 1982).
A recital of the above rule history demonstrates, I think, beyond any hope of successful contradiction, that the entire thrust, purpose and intent behind Fla.R.App.P. 9.331, as adopted, was to authorize en banc review in only one restricted class of cases, to wit: where there exists an intra-district conflict of decisions. Indeed, the Court specifically eliminated an additional ground for en banc review, which had been recommended by the Commission, namely, where the decision involved a question of exceptional importance. Moreover, the rule was intended to supplant the former constitutional jurisdiction of the Florida Supreme Court to review intra-district conflict of decisions within a district court of appeal. It is, therefore, clear that district court en banc review is limited entirely to intra-district conflict of decisions.
It is true that Fla.R.App.P. 9.331(a) provides that "[e]n banc hearings and rehearings shall not be ordered unless necessary to maintain uniformity in the court's decisions," but it is plain from the above rule history that such a maintenance of uniformity in court decisions is only called for in the event of an intra-district conflict of decisions. Indeed, there was never even a whisper of a contrary idea during any of the proceedings, as above detailed, which led to the rule.

*922 II
Today's plurality opinion, however, departs from the letter and intent of Fla.R. App.P. 9.331, by announcing that en banc district court of appeal review lies "whenever it appears that [decisions within the district] are so inconsistent and disharmonious that they would not have been rendered by the same panel of the court," [912 n. 1], a test that the plurality takes pains to point out is not the same as an intra-district conflict of decisions. Plainly and simply, this is a subjective test, difficult at best to grasp or enforce, which requires us to speculate whether the same panel would have rendered the same two decisions under consideration. As Judge Nesbitt quite properly points out, such a test is by nature vague and ambiguous, does not require intra-district conflict of decisions as a prerequisite to en banc review, and invites, if not supports, second appeals from a panel decision which is thought erroneous on the merits by the full court. This is contrary to the entire purpose behind the adoption of Fla.R. App.P. 9.331; it is also contrary to our recent decision in Finney v. State, 420 So.2d 639 (Fla. 3d DCA 1982) (en banc), which adopts the intra-district conflict of decisions test as the sole basis of invoking en banc review in a district court of appeal under Fla.R.App.P. 9.331.
For the above additional reasons, then, I think, Judge Nesbitt's dissent in this cause is eminently correct. The order setting this cause for rehearing en banc should be vacated and the panel decision herein reinstated.
BASKIN, J., concurs.
NOTES
[1] The rule provides:

(a) En Banc Proceedings: Generally. A majority of the judges of a district court of appeal may order a proceeding pending before the court be determined en banc. A district court of appeal en banc shall consist of the judges in regular active service on the court. En banc hearings and rehearings shall not be ordered unless necessary to maintain uniformity in the court's decisions.
According to the committee commentary to the rule, while "maintenance of uniformity in the court's decisions is the equivalent of decisional conflict as developed by [the] Supreme Court ... [t]he district courts are free ... to develop their own concept of decisional uniformity." Beginning that process, we look first to the statement of the supreme court in Town of Enterprise v. State, 29 Fla. 128, 10 So. 740, 746 (1892) that the term "`[u]niformity' indicates `consistency,' `resemblance,' `sameness,' a `conformity' to one pattern."
Applying these general criteria to the problem at hand is not an easy task. We do note, however, that a primary function of the en banc rule is to standardize the decisions of each district so as to minimize the importance of the "luck of the [appellate] draw," see McAllister v. McAllister, 345 So.2d 352, 354 (Fla. 4th DCA 1977), cert. denied, 357 So.2d 186 (Fla. 1978) in presenting cases before our increasingly multi-member courts. Considered in that light, we believe that an appropriate standard or rule-of-thumb is the rather practical one that decisions lack uniformity whenever it appears that they are so inconsistent and disharmonious that they would not have been rendered by the same panel of the court. Since this is the case, as is forcefully shown by the fact that Fla.R.App.P. 9.331(b) provides for a hearing en banc to preserve "uniformity" before any decision or opinion has been rendered at all, the particular form in which the nonuniform results are expressed  whether by written opinion, per curiam affirmance or otherwise  cannot jurisdictionally matter, and is important only as a factor in the determination of whether the discretionary authority to grant an en banc hearing will be exercised. In this respect at least, there is an obvious distinction between "uniformity" and the prerequisite of "direct conflict" between district court decisions which is necessary to support supreme court review jurisdiction. In the latter instance, because the emphasis is upon the reconciliation of differing legal precedents within the jurisdiction, see N & L Auto Parts Co. v. Doman, 117 So.2d 410, 412 (Fla. 1960), the type of opinion or decision was of great significance even under the previous version of Art. V. § 3(b)(3), Fla. Const. (1972), see Foley v. Weaver Drugs, Inc., 177 So.2d 221 (Fla. 1965), and is decisive under the present one. Art. V. § 3(b)(3), Fla. Const. (1980) ("expressly and directly conflicts"); Jenkins v. State, 385 So.2d 1356 (Fla. 1980); Dodi Publishing Co. v. Editorial America, S.A., 385 So.2d 1369 (Fla. 1980).
The present case clearly falls within these guidelines. The general principles of constructive and implied actual notice of defects in title by which one is put on inquiry are so well established, e.g., Sapp v. Warner, 105 Fla. 245, 141 So. 124, 143 So. 648 (1932), and so clearly applicable to this case, Hagan v. Sabal Palms, Inc., 186 So.2d 302, 313 (Fla. 2d DCA 1966), cert. denied, 192 So.2d 489 (Fla. 1966), that the judgment below could be affirmed only if a deed to a non-relative for love and affection alone is not invalid. (In fact, no other basis for the result has even been suggested.) Since, however, the Havris court held that it was, it is plain that the two conclusions cannot coexist. The en banc rule is available to resolve this contradiction in our decisions.
[2] See also, Lawyers' Title Guaranty Fund, Title Note 10.03.05 (1979):

A. The question is whether a deed which recites the sole consideration as `love and affection' where the deed fails to recite that the grantees are blood relatives of the grantor is valid.
In Florida Nat. Bank & Trust Co., Etc. v. Havris, 366 So.2d 491 (Fla. 3d DCA 1979), a conveyance to a friend not related to the grantor was held invalid where love and affection was the consideration. In that case the court said that Florida courts have recognized love and affection, express or implied, with absence of other consideration, as adequate considerations where the relationship of the grantor and grantee has been a blood relationship or a relationship of marital affinity, which is the relationship of husband and wife.
A deed for love and affection is a voluntary act, and is not clear whether the grantee has any superior rights to the grantor or others holding under him. Triesbach [Triesback] v. Tyler [62 Fla. 580], 56 So. 947 (Fla. 1911); Harrod v. Simmons, 143 So.2d 717 (Fla. 2d DCA 1962); Tischler v. Robinson, 84 So. 914 (Fla. 1920); and Money v. Powell, 139 So.2d 702 (Fla. 3d DCA 1962). Therefore, it is The Fund's position that a title based on a deed reciting the consideration as `love and affection' does not justify issuing a Fund policy to the grantee of such deed. It is also The Fund's opinion that a title based on a deed from such grantee does not justify issuing a Fund policy unless it is first determined that such grantee is a blood relative of his grantor.
For additional authority for the proposition that the face of the deed put subsequent purchasers to the duty of diligent inquiry which would have shown the extrinsic, non-record fact that the grantor and grantee were not related and that the deed was therefore void under Havris, see Hagan v. Sabal Palms, Inc., supra; Asisten v. Underwood, 183 Cal. App.2d 304, 7 Cal. Rptr. 84 (1960); Ochenkowsky v. Dunaj, 137 Misc. 674, 244 N.Y.S. 267 (Sup.Ct. 1930), aff'd, 232 App.Div. 441, 251 N.Y.S. 589 (1931); Stevens v. American Savings Institution, Inc., 289 Or. 349, 613 P.2d 1057 (1980).
[3] We emphasize the limited nature of our ruling, which is determined by the express "love and affection" statement  the epitome of a "red flag"  on the face of the deed. If it had contained only the usual recital of a "good and valuable consideration," Mrs. Ross could not have asserted, and a subsequent purchaser would, without more, not have been on notice that the consideration was legally insufficient and the deed invalid on that ground. See Mexican Crude Rubber Co. v. Ackley, 101 Fla. 552, 134 So. 585 (1930); Daniell v. Sherrill, 48 So.2d 736 (Fla. 1950).
[4] As the reader will readily observe, Judge Schwartz' opinion as to the merits of the present case represents the majority opinion and decision. However, this dissenting opinion, having been joined in by Chief Judge Hubbart and Judges Barkdull and Baskin, and specially concurred in by Judge Ferguson, has become the majority opinion as to the scope of review for granting rehearings en banc.
[5] 53 Fla. Bar J. 274, 279, Report of the Supreme Court Commission on the Florida Appellate Court Structure (1979).
[6] In re Rule 9.331, Florida Rules of Appellate Procedure, 374 So.2d 992 (Fla. 1979).
[7] 54 Fla. Bar J. 406, 412, An Analysis of the 1980 Jurisdictional Amendment (1980).
[8] In Re Rule 9.331, 416 So.2d 1127 (Fla. 1982).
[9] The minority opinion suggests that the use of the language "necessary to maintain uniformity" indicates a different standard than the "direct conflict" required by the Supreme Court. There is no difference in meaning between the two phrases. Black's Law Dictionary, 5th Edition, defines the word "uniform" as:

Conforming to one rule, mode, pattern or unvarying standard; not different at different times or places; applicable to all places or divisions of a country. Equable, applying alike to all within a class; sameness.
This "sameness" is the controlling factor in determining a "direct conflict" as will be discussed later in this dissent. Different labels to describe the requisite type of conflict may have been purposely employed by the drafters in an attempt to distinguish which court's jurisdiction is sought to be invoked.
[10] The Committee Note to Rule 9.331 indicates that the district courts of appeal are free to develop their own concepts of decisional uniformity. This, in my view, has reference to divergent practices about the use and employment of the rule rather than the scope of review. Such practices include: (1) the form which a nonuniform decision may take (per curiam affirmance without an opinion, an order dismissing an appeal or denying an extraordinary writ without an opinion); (2) whether rehearing could be granted before receding from an earlier decision rendered by that court; or (3) whether there may be a conflict with an opinion which has not yet been released. It is in this sense, as the majority recognizes in footnote 1, that the district courts may develop their own definitions different from the Supreme Court.
[11] Even if this court could consider any apparent conflict with those decisions, a quick perusal of those cases indicates that their holding is consistent with the original majority opinion in this case. Despite some broad language in Sapp v. Warner, 105 Fla. 245, 141 So. 124 (1932), the actual holding is that the purchasers were bound to look to the record guardianship proceeding in order to ascertain whether there was authority to execute a deed of conveyance. It does not require the purchaser or examining attorney to resort to matters extrinsic to the record and is therefore consistent with Zaucha v. Town of Medley, 66 So.2d 238 (Fla. 1953). Hagen v. Sabal Palms, Inc., 186 So.2d 302 (Fla. 2d DCA 1966), cert. denied, 192 So.2d 489 (Fla. 1966), also cited by the majority, merely adopts the well-settled rule announced in Sapp v. Warner, supra, and Zaucha v. Town of Medley, supra.

Furthermore, in Hull v. Maryland Casualty Co., 79 So.2d 517 (Fla. 1955), the court held that the true owner is estopped to assert his title against bona fide purchasers who rely upon the record and are without notice of the interest of the true owner. And, in McCoy v. Love, 382 So.2d 647 (Fla. 1980), the supreme court held that an elderly grantor is charged with the responsibility of informing herself as to the legal effect of the deed she is conveying. These two decisions as well as the maxim that, as between two innocent parties, the party whose negligence contributes to the error, will bear the risk of loss, Niccolls v. Jennings, 92 So.2d 829 (Fla. 1957), support the original majority opinion that rescission should not be granted in favor of Mrs. Ross against the third party purchasers.